CHARLES MARTHINSON AND JAMES L. WHITE v. THE NORTH BRITISH AND MERCANTILE INSURANCE COMPANY.

*Fire insurance—Sufficiency of proofs of loss—Waiver of forfeiture of policy—Interest.*

Two of the adjusting agents of a fire insurance company, soon after notice of a loss, visited the scene of the fire, and examined two members of the firm to which the policy was issued, whose statements were reduced to writing, and sworn to before a *local* agent of the company, from which the adjusters were informed of certain breaches of the warranties of the assured, contained in an application for a former policy claimed to apply to the one in suit, but made no claim of forfeiture on that account, nor in any way intimated an intention to refuse or contest the payment of the loss, and took the statements away with them. Soon after, the assured made out proofs of loss, and submitted the same to the *local* agents, who forwarded them to the company's office, and a month afterwards the assured received a letter from the superintendent, objecting to the sufficiency of the proofs in certain specified particulars, but making no reference to said breaches of warranty. New proofs were made out and sent to the superintendent, who wrote a letter to the attorney in whose hands the claim had been placed for settlement, in which objec-

tions to the sufficiency of the original and supplemental proofs were renewed, but without any claim of forfeiture on account of breach of warranties in application. In this letter the company declined to accept either of said proofs, specifying certain reasons for such declination, and stating that the company waived none of its rights or defenses under the policy, but reserved each and all of them. Upon receipt of this letter the proofs were perfected so as to conform to the requirements of the policy, except in two particulars, namely, the absence of the oath and signature of one of the assured, and a delay in completing the proofs which might be claimed to be beyond a reasonable time after the loss. These proofs were forwarded to the company, and an answer received from the superintendent referring to and reiterating former objections in a general way, but without reference to the said breaches of warranty.

*Held*, that the question of whether the assured were excused for the omission to obtain the signature of Wilson to the proofs of loss was properly submitted to the jury, who were justified in finding that the proofs were a substantial compliance with the conditions of the policy, and that there was no unreasonable delay in completing them.

*Held*, further, that the action of the company was a waiver of all defenses based upon breaches of warranty or forfeiture under the policy, which question of waiver, under the facts, was one of *law*, and the jury should have been instructed accordingly.

*Held*, further, that it was proper to compute interest upon the amount of the loss from the date of the commencement of suit, and add it to such amount in making up the verdict.

Error to Kent. (Montgomery, J.) Argued November 11 and 12, 1886. Decided January 20, 1887.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Norris & Uhl*, for appellant.

*T. J. O'Brien (J. H. Campbell*, of counsel), for plaintiffs.

MORSE, J. Plaintiffs recovered in the court below upon a fire insurance policy, written by the defendant in favor of Barrington, Wilson & Co., upon mill property at Round lake, near the city of Cadillac, in the county of Wexford.

The defense gave notice, under the general issue, that

there was an application and survey on file with its agents, which was a warranty of the assured, and made a part of the policy sued upon; and alleged a breach of the warranties therein contained, and forfeitures of the policy, as follows:

"1. That the insured property was worth $12,000.

"2. That the said property was incumbered only to the amount of a $2,000 mortgage, and part of machinery was on contract. '

"3. That no other persons were interested in the said property than Barrington, Wilson & Co., and the said mort-. gagee.

"4. That the mill insured, and ground on which it stood, were owned by the insured, Barrington, Wilson & Co.

"5. That there was and should be on the insured premises a watchman, at all times when the mill (insured) is not running, during the running season.

"6. That there was always on hand, ready for use, ladders. of sufficient length to reach the roof covering said property.

"7. That barrels of water will be kept on the roof (covering said property) during the mill-running season, in the summer.

"8. That lumber was not, and should not be, piled nearer to the insured (mill) than 200 feet.

"9. That if the situation or circumstances (of the insured property) are changed, or risk increased, or property (insured) becomes incumbered in any manner or way, the said insured would notify the agent of defendant forthwith of such alteration, increase of risk, or incumbrance.

"10. That the shavings used in said mill for fuel were and would be conveyed to the furnace with an iron chain."

During the year 1882, and since, the firm of Sawyer & Bishop have been insurance agents at Cadillac, representing, among others, the defendant company. In 1882, while the mill was in process of construction, these agents wrote builder's risks upon it, which were carried until its completion.

January 2, 1883, when the mill was completed, Copley and Barrington went to the office of these agents, and applied for insurance. They told Sawyer, who filled out the application, that the firm of Barrington, Wilson & Co. was composed of Barrington, Wilson, and Copley. Barrington signed the

application, which named $8,000 as the sum to be written. Nothing was said as to the companies which should carry it. The agents put $3,000 in the defendant company, and the balance in two Philadelphia companies. The policies all expired in one year from their date.

January 24, 1883, the insurance in defendant company was reduced one-half, and $1,500 written in another company, the German-American. About a week before the policies expired, Sawyer visited the mill, and wanted to renew the insurance, which expired January 2, 1884.

Before this time Copley had retired from the firm, and two brothers, by the name of Hiatt, had taken his place, but the firm name remained as at first. This was known to Sawyer. The firm did not feel able to take $8,000 again, but, after some talk, Sawyer was authorized to write the property up for $6,000. Upon his return to Cadillac he wrote new policies in the same companies, dropping out the German-American. Only $1,000 was taken in the defendant company, which is the policy in suit. It was made payable to Marthinson & White (the plaintiffs), mortgagees, as their interest might appear. Nothing was said about any application or survey. No new application was made or survey taken.

The defendant's agents speak of these policies as being renewals, but new policies were written, and the one sued upon was for a different amount than the old one.

July 29, 1884, the mill and other property insured was destroyed by fire.

When the policy of insurance was offered in evidence, it was objected to on the ground that the policy contained, upon a printed slip attached thereto, the following clause:

"Reference is made to application and survey on file, which is a warranty of assured, and hereby made a part of this policy."

The defendant's counsel contended that plaintiffs should produce the application and survey, the same by the terms

of the policy being a part of it, and introduce the two papers together. The court inclined to this view of the case, but, upon the claim of plaintiffs' counsel that there was no application and survey accompanying the policy in suit, admitted the policy, and allowed oral proof to be introduced bearing upon the question whether there was any such application or survey, as applied to the new policy.

He also submitted to the jury, in this connection, the following special question:

" Was the written application of the old firm of Barrington, Wilson & Co., dated on the second day of January, 1883, made a part of the new policy issued January 2, 1884?"

To which the jury answered, " No." This action is assigned as error.

We are inclined to the view that the submission of this question to the jury was a proper one. The policy sued upon could not be considered strictly, by its terms, a renewal of the old one. Upon its face it differed from the other, being for a less amount, and containing no reference to any previous policy. The application was not made with reference to any policy of insurance in this or any other company, but was a general one. The reference to an application and survey on file in the policy sued upon was not specific or certain enough.[1] 1 Wood, Fire Ins. (2d ed.) § 160, and cases cited.

But, in our view of the whole case, it is not necessary to pass upon this question, as will appear hereafter.

The plaintiffs also claimed that there had been a waiver of some of the breaches of the warranties contained in the application before the loss, for the reason that the agents of the defendant company, Sawyer & Bishop, and also special agents, were at the mill frequently during the year 1883, and knew that barrels of water were not kept on the roof of the

---

[1] No reference to any application for insurance was made in the *body* of the policy.

mill during the summer season, and that the shavings were
not conveyed to the furnace by an iron chain, and of other
breaches; that, knowing this, they took the insurance of
1884 without saying anything about these breaches, or requir-
ing that such warranties should be thereafter complied with,
and therefore it must be considered that they placed this in-
surance in reference to the property as it then was, and as it
had been used and kept under the old policy; and that such
action was a waiver of these conditions.

Plaintiffs also claimed a waiver of all the breaches of war-
ranties in the application, and of the conditions named in the
policy, after the loss, which claim was submitted to the jury,
who found such waiver as claimed. This is also assigned as
error.

To dispose of this *last* question of *waiver after loss,* which in
our view is the *controlling* issue in the case, it will be neces-
sary to refer to the proceedings of the parties, after the fire,
as to proofs of loss, and steps taken looking towards an ad-
justment of the same.

The property burned July 29, 1884. Notice of the fire
was at once given to the local agents at Cadillac, Sawyer &
Bishop. Soon after, an adjusting agent of the defendant
company went to the mill, and looked the matter over.

On August 21, 1884, two of the adjusting agents met Bar-
rington and the Hiatt Brothers, at Cadillac, having before
that time notified the firm to meet them there to consult
with them relative to adjusting the loss. At this meeting
one of the Hiatts and Barrington were examined, separately
and at length, by these agents, and their statements taken in
writing, and under oath, before a notary public, who was a
member of the insurance firm of Sawyer & Bishop, and a
local agent of the defendant.

These statements were put in evidence by the defense.

From these statements the defendant company was in-
formed upon that day of the breaches of warranties. Hiatt's

statement, on oath, was to the effect that the shavings were
not conveyed to the furnace by an iron chain, that there
were no barrels of water on the roof at the time of the fire,
and no watchman kept at the mill all night.

Nothing was said, however, about any claim of forfeiture
of insurance, and no intimation was given from which Bar-
rington or Hiatt could infer any intent on the part of the in-
surance company to refuse or contest the payment of the
loss.    The agents pocketed the statements, and went away.

On the second of September the assured procured blanks,
and obtained some instructions, from the local agents, and
made out their proofs of loss, and submitted the same to
such agents, who forwarded them to Chicago.    No attention
was paid to them until October 3, when the general superin-
tendent at that place wrote to them the following letter:

"CHICAGO, ILL., October 3, 1884.

"*Barrington, Wilson & Co., Cadillac, Mich.*—GENTLEMEN:
On returning from an absence of some days, I find on my
desk papers purporting to be proofs of loss under policy No.
600,794, claiming to have been sustained by a fire, July 29,
1884, which appear to have been served upon Sawyer, Bishop,
Haire, and by them forwarded here.    We have given the
papers examination at our earliest opportunity, and beg to
herewith return the same to you, declining to accept the same
as due and sufficient, under the conditions of said policy, and
to which we refer you for a more particular and exact state-
ment; and we specify for your particular attention the fol-
lowing objections thereto:

"1. By your own showing on said papers, purporting to be proofs
of loss, your claim against us, as made therein, is unjust, excessive,
and incorrect, and the same should be corrected accordingly.

"2. The statement as to ownership of the building, which appears
to have been a part of the realty, and to have been insured as such,
and that the same had two chattel mortgages thereon, would seem to
clash; and we desire that the same be set forth more clearly as to the
exact interest of the assured in said building, and the parties' names,
and their several interests therein, going to make up the firm of B.,
W. & Co., assured.

"3. In like manner, it is stated that part of the machinery was
held on contract by Cobbs & Mitchell, strangers to our contract (if
any exists), and we desire the exact interest of the assured to be

stated, and a certified or verified copy of said 'contract' to be furnished as a part of said claimed proofs.

"4. The affidavit and signature to said paper purporting to be proofs of loss are insufficient, and perjury could not be predicated thereon only as against J. W. Barrington. We desire the signatures and the oaths of the members composing the firm,—all of them,— unless legal disability, or other unavoidable obstacle, exists to prevent the same.

"5. The paper purporting to be a certificate of the nearest magistrate is ambiguous, and, in our opinion, faulty, and not formal, in that it certifies to an 'amount' far below the claim made in the preceding paper, and, if correct, one-sixth thereof would be far below the claim you endeavor to make against us elsewhere in said paper.

" You will please take notice that each of the above objections are separately made, and the one is not dependent upon the other.

" You will further take notice that in returning said papers, and making the objections thereto, and in all other matters herein, this company waives none of its rights and defenses under their said policy, but expressly reserves each and every one thereof unto itself.

"For the Company, W. B. CORNELL, Supt."

Endeavoring to comply with the requirements of this letter, new proofs of loss were prepared of date March 9, 1885, and sent to Chicago. T. J. O'Brien, as attorney for the assured, also wrote two letters to Cornell, of date April 15 and 22.

May 15, 1885, Cornell replied as follows:

"Registered, L. B.     CHICAGO, ILL., May 15, 1885.
"T. J. O'Brien, Esq., Attorney at Law, Grand Rapids, Mich.—DEAR SIR: In the matter of claim for loss Barrington, Wilson & Co., beg to say that, on my return home from an extended absence, I find on my desk your letter of April 15, 1885; also papers purporting to be proofs of loss in the above matter, dated March 9, 1885. I also find returned to me original papers purporting to be proofs of loss, accompanied by your letter of April 22, 1885. As no one in our office was familiar with this matter except the writer, no answer could be made until my return. I make haste to advise you in the premises immediately upon my reading same, that no delay may be charged against us. This company decline to accept either the 'original' papers or the supplementary

papers purporting to be proofs of loss, and we specify, among. others, the following reasons why we decline to do so:

" 1. Neither set of papers is in compliance with the explicit terms and conditions of our policy, to which you are respectfully referred for a complete statement thereof.

" 2. The 'original' papers not having any amendment attached thereto, and in all respects being unchanged themselves, are again objected to as per our letter of October 3, 1884, addressed to Barrington, Wilson & Co., at Cadillac, Mich., to which you are respectfully referred.

" 3. That the supplementary papers do not comply with or relieve Barrington, Wilson & Co. from the first and fourth specific objections made in said letter of October 3, 1884, and the same are herewith reiterated, and again specifically and separately insisted upon.

" 4. That as to our second, third, and fifth objections named in said letter, we are still of the opinion that the compliance attempted has not been full and complete under said policy conditions, and we leave any amendment thereto to you, to make the same or not, at your own peril.

" 5. That more than a reasonable time has elapsed in which Barrington, Wilson & Co. could and should have complied with the conditions of our policy, and this company ought to be excused from any liability under the same, if any ever existed, because of inexcusable laches.

" 6. As you nowhere indicate that you are the attorney for Barrington, Wilson & Co., we can only address you as we have, and say that we do not, for that reason, return the papers to you ('original' and 'supplementary'), but we hold them subject to your order, declining to accept the same for reasons above stated, as well as other defects therein.

" Take notice that our objections are made separately, and not the one dependent on the other, and the company hereby expressly waives none of its rights or defenses under their said policy, but expressly reserves each and every one of them unto itself.

" For the Company,          W. B. CORNELL, Supt.

" Will return the papers, postpaid, to wherever you may direct, as the same came from you.          W. B. C., Supt."

Upon the receipt of this communication, work was commenced to perfect such proofs of loss, and finally, on the eleventh of July, 1885, they were received at Chicago the third time. These proofs complied with all the requirements of the policy, with two exceptions, to wit:

1. The oath and signature of Wilson was wanting, as he could not be found.

2. There was a delay in completing the proofs which might be claimed to be beyond a reasonable time after the loss.

July 23, 1885, another letter was received from Cornell, as follows:

"Registered.                              CHICAGO, ILL., July 23, 1885.

"*T.·J. O'Brien, Esq., Grand Rapids, Mich.*—DEAR SIR: I have yours of the eleventh inst., inclosing a new batch of papers, purporting to be 'supplementary proofs of loss,' in the claim of Barrington, Wilson & Co.

"You do not yet state that you are the attorney for any one interested in this matter, but, as the papers come from you, I reply that the first, second, and third batch of papers are declined and refused as the due and formal proofs of loss that the conditions of our policy call for, and to which you are again referred, and all of said papers are subject to your order as attorney for the claimants, or the order of the latter themselves.

"We can only again refer you to our respects of October 3, 1884, to claimants, and to our respects to you of May 15, 1885, and repeat our position as assumed therein, and our demands as made therein, that yet remain uncomplied with. Certain of these demands were made October 3, 1884, and the claimants have had over eight months in which to comply, and compliance was possible, unless, indeed, the member of the firm who has not yet sworn to or subscribed the 'papers' sent me is afraid to swear to and subscribe to the facts that our policy calls for to constitute due and formal proofs, and a legal claim on the company.

"We join issue with you in your statement, 'the claim is an honest one,' and feel all the more strong in our belief now that one of the members of the firm of claimants, who was on the ground at the time of the fire, evades or refuses to make and sign on oath as have the others. In all the papers sent me, the claim against this company has been unjust and excessive, and the amount thereof is not supported by the papers themselves.

"Again, the statement of the amount of the pretended loss, upon various items named, is beyond their actual value; and this company is entitled, after due and formal proofs, to an appraisal as to what is or was the correct and actual loss or damage by fire thereto, a difference having arisen as to the same.

"Repeating our former objections and demands, and standing thereon, and waiving none of our rights, objections, or defenses under our policy, I am,

"For the Company,          W. B. CORNELL, Supt."

On the twenty-fourth of the same month this suit was commenced.

In relation to these proofs of loss, the circuit judge instructed the jury that it was for them to determine whether the omission of Wilson's signature and oath was excused, and that, if they found that the assured employed all means possible to obtain his name and oath to the proofs, the want of such name and oath would not invalidate the proofs; and, further, that the first proofs were submitted in time, or, if not, the time was waived by the letter of Cornell of October 3.

"The company delayed one month before it made known any objections. It is for you to say whether or not the company itself was guilty of laches in this respect, and how far, if at all, this delay of the company caused the subsequent omission and delay in presenting further proofs of loss."

It is evident from the record that the assured did all they possibly could do in the matter of the perfecting of these proofs, and the letters of Cornell show an express purpose to embarrass and hinder them in the making of such proofs. There is a lack of candor and straightforward dealing on the part of the company, not commendable, to say the least. There seems to have been an evident purpose to impose blind conditions, in the hope of being able to legally reject the proofs of loss.

The charge of the court was correct, and the jury were justified in finding that the proofs of loss were a substantial compliance with the conditions of the policy, and that there was no unreasonable delay in completing them. Soon after the fire, the members of the firm, which was broken up thereby, separated, and all the delay, not chargeable to the laches of the agents of the defendant company, was occa-

sioned by the difficulty of finding Barrington and the inability to find Wilson.

The proofs of loss being found to be not in fault, and sufficient, by the jury, upon a fair submission of the question to them, we do not think it necessary to examine into the errors alleged upon the question of waiver before loss, or to inquire into any breaches of the warranties contained in the application, or the conditions of the policy, or to determine whether or not the court erred in admitting oral proof upon, or submitting to the jury, the question whether this application attached or not to the policy in suit.

By the course of proceeding in reference to the reception and making of the proofs of loss by the defendant company, it must be considered as having waived all defenses based upon breaches of warranty or forfeiture under the insurance contract.

When the adjusting agents of the company were at Cadillac, on the twenty-first of August, 1884, by their examination of Barrington and Hiatt, they were put in possession of evidence, by the way of admissions of third parties under oath, which gave them the opportunity then of making the defense sought to be established upon the trial. They had only to say to the assured:

" By your own admissions, your policy is forfeited, and we refuse, therefore, to pay your loss."

On the contrary, they saw fit to remain silent, and, without notice of these different items of defense, put the assured to the inconvenience, trouble, and expense of perfecting their proofs of loss, and in the very last letter content themselves with objecting to such proofs. With a knowledge of all the acts creating the forfeiture claimed upon the trial, the defendant company put the assured to expense in perfecting proofs of loss, which, under the present claim of defendant, was wholly unnecessary, as the proofs, however perfect, were valueless, if the defense of forfeiture was a good one.

By this action the defendant company must be held to have waived such defenses. *Carpenter v. Continental Ins. Co.*, 61 Mich. 635; *German Fire Ins. Co. v. Grunert*, 112 Ill. 69, 78; *Titus v. Glens Falls Ins. Co.*, 81 N. Y. 419; *Gans v. St. Paul, etc., Ins. Co.*, 43 Wis. 109.

This question of waiver was submitted to the jury, but we regard it as a question of law, as the facts of the action of the company and the assured are undisputed, and mostly furnished by written evidence. The jury ought to have been instructed that the defendant had waived all defense based upon warranties or forfeitures.

It is argued by defendant's counsel that the defendant saved its rights, and waived none of its defenses under the application or policy, by reason of the last clause of Cornell's first letter, to wit:

" You will further take notice that in returning said papers, and making the objections thereto, and in all other matters herein, this company waives none of its rights and defenses under their said policy, but expressly reserves each and every one thereof unto itself;"—

Which clause, in substance, was repeated in the other letters. We do not think this general reference to other possible defenses was sufficient. It devolved upon the defendant to specifically state its defenses, or some of them, if it had any other than those going to the defects in the proofs of loss. If the company had frankly stated that it refused to pay the alleged loss because of the breaches of warranty and forfeiture by the conditions of the policy, the knowledge of which it then possessed, the assured would have, in all probability, gone no further into cost and trouble to perfect such proofs of loss, as its refusal to pay on other grounds would have rendered it unnecessary. This loose and general reservation of- its rights cannot be considered as an adequate notice of the defenses insisted upon at the trial, and it must be held that such defenses were waived by its conduct. *Mercantile Ins. Co. v. Holthaus*, 43 Mich. 423.

It was proper to compute interest upon the amount of the loss from the date of the commencement of the suit, and to add such interest to the amount of said loss in making up the verdict.

The judgment is affirmed, with costs.

The other Justices concurred.