A. H. FLETCHER v. MINNEAPOLIS FIRE & MARINE MUTUAL
INSURANCE COMPANY.[1]

June 11, 1900.

Nos. 11,947—(40).

**Alteration of Insurance Policy by Insured.**
　　After its execution and delivery, an insurance policy was materially changed by the insured, so as to render it void. *Held:*

**Fraud.**
　　1. That a finding of the trial court to the effect that the changes were not made with fraudulent intent is sustained by the evidence.

**Waiver.**
　　2. That the defendant did not ratify the changed policy, and waive its defense, after notice of the fact, by taking proofs of loss, and a finding that it did is not sustained by the evidence.

Action in the district court for Cottonwood county to recover $1,200, and interest, on a fire insurance policy. The case was tried before P. E. Brown, J., who found in favor of plaintiff for $897.30, and interest. From an order denying a motion for a new trial, defendant appealed. Reversed.

*Smith & Parsons,* for appellant.

*Wilson Borst* and *T. A. Alexander,* for respondent.

[1] Reported in 83 N. W. 29.

LEWIS, J.

The plaintiff owned a store at Okabena, in this state, which was managed and conducted by his son, C. E. Fletcher. The son procured an insurance policy of $1,200 on the goods from defendant company, and after the policy was delivered to him he made material changes in it. This action is brought to enforce payment of the amount of plaintiff's loss by fire, and the company defends upon the ground that the policy was rendered void by the changes. The trial court found that the party named as the insured in the policy, when executed and delivered, was A. H. Fletcher & Son, and that after its delivery the plaintiff, by his agent, C. E. Fletcher, materially changed and altered the policy by striking out of the body of the policy the words "& Son," so as to make the same appear to insure A. H. Fletcher only, and that the plaintiff, also, by his agent, C. E. Fletcher, materially changed and altered the policy, after its delivery, by striking out of the body of the same the following clause:

"And, as a further consideration and condition, the insured, or their legal representatives, agree to pay all such sums as may be assessed by the directors of said company pursuant to the laws of the state of Minnesota, but not in any event to exceed a sum equal and in addition to said cash premium."

The court further found as follows: "Neither of said alterations was fraudulently made. Said defendant, at the time of the making of said policy, knew that all of the property covered by said policy was owned solely by the plaintiff, and was instructed by the plaintiff to write the policy in his name. After said alterations were made, and after the loss of the property by fire, covered by said insurance policy, the defendant, being fully advised of said alteration in striking out the said words '& Son,' ratified the same, and waived its alleged defenses of alteration in this action, by recognizing the continued validity of the policy, after being advised of all the matters above found, by requiring the plaintiff to submit proofs of loss, and additional proofs of loss, with certified copies of bills and invoices relating to the property covered by the policy, all of which was done by the plaintiff, at trouble and expense to him."

Judgment was ordered for plaintiff, and defendant appeals from an order denying its motion for a new trial.

The assignments of error challenge the findings of the court to the effect that the alterations were not fraudulently made, and that

defendant ratified the policy as changed, and waived its defense. As to the change in the name by striking out the words "& Son," there is evidence reasonably tending to support the finding that defendant had been instructed to write the policy in the name of plaintiff, and that he was the owner of the goods. But, as to the other alteration, the court does not find that there was any prior agreement concerning it. What effect, then, is to be given to the finding that these changes were not fraudulently made?

The son testified that, at the time he was asked by the agent of defendant to renew the policy, he told him that his father did not want to insure in a mutual company, as it was liable to make an extra tax or premium; that the agent said that the clause in question did not amount to anything, and he finally came to the conclusion that he would make out a policy, send it down there, and, if it was all right, to keep it,—if he (the son) concluded to accept it, keep it, and, if not, send it back. This statement was made by the son in explanation of his act in striking out the clause. This evidence was offered to show the good faith of the son in making the change, and we think it sufficiently supports the finding that the act was not fraudulent; that is, that it was not committed with the intent to forge the instrument, but was done under the mistaken idea that he had authority to do so.

The fact remains, however, that the alteration was material, and that, having been made without authority, it rendered the policy void, unless the defendant ratified the policy as changed, and waived its defense. The cases cited by appellant (notably, Wilson v. Hayes, 40 Minn. 531, 42 N. W. 467) do not apply, in view of the facts as found by the court. Where an instrument has been forged, the principle applies that it cannot be ratified by the maker for the benefit of the party committing the fraud. Wilson v. Hayes, supra. But where the change constituting forfeiture has been made under a mistake, or under such circumstances as do not constitute a crime, such forfeiture may be waived. Marthinson v. North British, 64 Mich. 372, 31 N. W. 291; Titus v. Glens Falls, 81 N. Y. 410; Walker v. Phœnix, 156 N. Y. 628, 51 N. E. 392. See also Janney, Semple & Co. v. Goehringer, 52 Minn. 428, 54 N. W. 481. Respondent, on the authority of these cases, holds that defendant ratified

the policy and waived its defense by its subsequent conduct in reference to proofs of loss.

It appears from the evidence that soon after the fire the adjuster of defendant visited Okabena, and saw the policy in the hands of the son, noticed that it had been changed, questioned him about it, and then proceeded to examine the books, and look into the loss, and the cause of the fire.   At the time this investigation was being conducted, the following instrument was executed at the request of the adjuster (Exhibit 1):

"Nonwaiver Agreement.

It is hereby mutually understood by and between A. H. Fletcher, of the first part, and the German-American of New York, and other companies signing this agreement, parties of the second part, that any action taken by said parties of the second part in investigating the cause of fire, or in investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on August 4, 1897, shall not waive or invalidate any of the conditions of the policies of the parties of the second part held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.   The intent of this agreement is to preserve the rights of all parties hereto, and provide for an investigation of the fire, and the determination of the amount of the loss or damage, without regard to the liability of the parties of the second part.   Signed in duplicate this 12th day of August, 1897.

A. H. Fletcher,<br>By C. E. Fletcher, as agent.<br>German-American Ins. Co.,<br>By E. J. Henry.

Mutual Fire Insurance Company of Minnesota, now Minneapolis Fire and Marine Mutual Insurance Company,

By Jno. B. Lee, Jr.

Witnesses:
 G. W. Mattoon,
 A. A. Alexander."

The adjusters completed their examination, and made a report of the facts to the company, but did not adjust the loss.   October 6 following, defendant wrote this letter to a representative of plaintiff (Exhibit D):

"F. Heywood, Pres.                              C. H. Spencer, Sec.
    Minneapolis Fire and Marine Mutual Insurance Company,
                        Minneapolis, Minn.
Subscribed Capital, $200,000.           Incorporated A. D. 1895.
                                        Minneapolis, Oct. 6, 1897.

T. A. Alexander,
            Attorney at Law,
                    Heron Lake, Minn.
Dear Sir:

We herewith return to you what purports to be a statement of loss to A. H. Fletcher, of Okabena, Minnesota, under policy No. 1,658, of the Mutual Fire Insurance Company of Minnesota. We return them to you, as they are not made in accordance with the terms and conditions provided in the policy.

                        Yours very truly,
        Minneapolis Fire and Marine Mutual Insurance Company,
                                By C. H. Spencer, Sec.,"

—And on October 15 following wrote this letter to the same party (Exhibit E):

"F. Heywood, Pres.                              C. H. Spencer, Sec.
    Minneapolis Fire and Marine Mutual Insurance Company,
                        Minneapolis, Minn.
Subscribed Capital, $200,000.           Incorporated A. D. 1895.
                                        Minneapolis, Oct. 15, 1897.

T. A. Alexander,
            Attorney at Law,
                    Heron Lake, Minn.
Dear Sir:

We are in receipt of your esteemed favor of the 14th inst., returning what purports to be a proof of loss, and, complying with your request, and without in any way, shape, or manner binding this company or acknowledging liability of any kind or nature, we will point out to you where the papers that we returned to you are wrong, and not in accordance with terms and conditions of the Minnesota standard policy, with general rider attached thereto:

Sec. 2, art. 3. 'Requirements. All proofs of loss shall also contain a complete schedule of the property damaged or destroyed, stating the quantity and cost of, and the amount of loss or damage to, each item thereof; also, the interest of the insured, and all incumbrance thereon.'

Sec. 3. 'In case of fire, the assured, as often as required, shall exhibit to any person designated by this company all that remains of any property in this policy described, and submit to examination under oath by any person named by this company, and subscribe the same, and, as often as required, shall produce for examination

all bills and invoices as relating to the property covered, or certified copies thereof if the original are lost.'

Now, if you will examine the papers that you have submitted, you will see that they do not in any wise comply with these provisions, for the reason that they do not state the quantity and cost and the damage to each article upon which you attempt to make claim for. We hereby further notify you that, if you intend to make a claim against this company on account of any policy that may have issued, we shall demand that you furnish us certified copies of bills of purchase for all goods, and that in other respects your proofs must comply with all the terms and conditions of the policy. When such a document is before us, we will then be able to act intelligently upon them, and either accept or reject them. Again returning you the papers, we are,        Yours very truly,

    Minneapolis Fire and Marine Mutual Insurance Company,

                        By C. H. Spencer, Sec.

You can attach certified copies of bills of purchase to your proofs when you make them.    We should require them where originals are lost."

The son testified on the trial that the adjuster had requested him to secure and forward the proofs of loss.    The agent claims that, in answer to a request from the son as to what he should do in reference to proofs, he told him to be guided by the contract.

In the case of Marthinson v. North British, supra, the company had delayed a month after ascertaining the facts before making any objection.    The opinion reads:

"They had only to say to the assured: 'By your own admissions, your policy is forfeited, and we refuse, therefore, to pay your loss.' On the contrary, they saw fit to remain silent, and, without notice of these different items of defense, put the assured to the inconvenience, trouble, and expense of perfecting their proofs of loss, and in the very last letter content themselves with objecting to such proofs."

In the other cases cited by respondent there was no evidence of any intention on the part of the company to stand upon its rights. Here, however, the very first thing that defendant's representatives did was to protect the defendant by securing the execution of the nonwaiver agreement, and the son had authority to execute it.    The evidence shows that the plaintiff was almost constantly absent in Illinois, and that the whole business, including the securing of insurance, was left to the son.    In the letter of October 15, returning

the proofs as insufficient, it is explicitly stated that the letter is written in compliance with a request; and, to further protect the defendant from waiver, this language is used: "* * * and without in any way, shape, or manner binding this company, or acknowledging liability of any kind or nature, we will point out to you where the papers that we returned to you are wrong. * * *" The adjuster first saw the altered policy August 12, upon visiting the scene of the fire. He asked why the alteration was made. He then secured the nonwaiver contract, and made an investigation, and reported the facts. The plaintiff attempted to make proofs of loss, and did not know how, and called upon defendant for information to help him perfect his claim against the defendant. The defendant furnished the information upon the condition that it waived none of its rights.

From this record we are satisfied that the finding of the court as to ratification and waiver is not supported by the evidence, and that the conclusions of law are not sustained by the facts.

Order reversed.