### THE UNION CENTRAL LIFE INSURANCE COMPANY *v.* JONES.

[No. 2,103.    Filed May 26, 1897.]

INSURANCE.—*Contract.*—*Forfeiture.*—The conditions of a policy upon which it is sought to base a forfeiture will be construed most strongly against the insurance company, and a forfeiture will not be enforced unless its enforcement is clearly demanded by the established rules for the construction of written contracts. *p. 598.*

SAME.—*Policy Susceptible of Two Interpretations.*—Where a policy is susceptible of two interpretations, the one giving greater indemnity and sustaining the claim, will be adopted by the court. *p. 600.*

SAME.—*Policy with Inconsistent Provisions.*—Where a policy contains inconsistent provisions, that which is most favorable to the insured will be adopted. *p. 600.*

SAME.—*Forfeiture.*—*Pleading.*—*Answer.*—In an action on an insurance policy, where the company claims a forfeiture, it is not necessary that the complaint aver that the company had not pursued the proper method for the forfeiture of the policy. It devolved upon the company to show by affirmative answer that it had done so. *pp. 601, 602.*

SAME.—*Forfeiture.*—*Waiver.*—Under a policy of insurance giving the company the election to cancel the policy upon the insured's failure to pay any premium note at maturity, and providing that upon cancellation all premium notes not then due shall be surrendered to insured, the company waives the forfeiture by treating the policy as still in force, notwithstanding a cancellation on its books, and enforcing collection of notes not due at the time of such cancellation. *p. 602.*

From the Delaware Circuit Court. *Affirmed.*

*Ramsey, Maxwell & Ramsey, E. E. Botkin* and *E. E. Sluss,* for appellant.

*Rollin Warner* and *A. W. Brady,* for appellee.

BLACK, J.—The appellee, Julia R. Jones, sued the appellant upon a policy of insurance issued by the appellant upon the life of Melvin L. Jones. A demurrer to the complaint for want of sufficient facts was overruled, and a demurrer to the appellant's answer was sustained. These rulings are presented for our consideration.

The complaint showed the issuing of the policy on the 17th of March, 1890, to said Melvin L. Jones, who then and thereafter, until his death, on the 2d of December, 1894, was the appellee's husband. By the terms of the policy set forth in the complaint, in consideration of the statements of the application for the policy and of the present payment of the sum of $333.10 at the home office of the company, as thereinafter described, and of the annual payment of $66.62, commencing on the 30th of December, 1894, and continuing thereafter during the term of ten years, and of the payment when due of any and all notes given for premiums or parts of same, the appellant insured the life of said Melvin L. Jones in the sum $1,200.00 for fifteen years, ending December 30, 1904, the appellant agreeing to pay that sum to him at that date, or in the event of his death before that date, to the appellee.

The premiums for the first five years were in the policy acknowledged to have been paid by $66.62 cash, and four notes for $66.62 each, payable respectively on the 30th of December, 1890, 1891, 1892, and 1893.

It was alleged in the complaint that said Melvin L. Jones performed all the stipulations and conditions on his part contained in said policy, and violated none

of the agreements or conditions thereof, except as hereinafter shown; that at the time of making the contract he paid the appellant $333.10, as follows: He paid the cash payment referred to in the policy in the sum of $66.62, and executed to the appellant his four several promissory notes, each for $66.62, payable respectively December 30, 1890, 1891, 1892, and 1893, providing for eight per cent. interest after maturity and attorneys' fees. He paid in full said notes falling due December 30, 1890, and December 30, 1891, respectively, but failed and neglected to pay the notes falling due December 30, 1892, and December 30, 1893, respectively.

It was alleged that at the time of making the contract he borrowed from the appellant $1,200.00, and that he executed to the appellant, to evidence this loan, his promissory note for that sum, payable five years thereafter, and for the interest thereon six coupon notes, one for $66.04, four for $84.00 each, and one for $17.96, payable, respectively, on the 1st of January, 1891, 1892, 1893, 1894, 1895, and March 17, 1895, all of said notes providing for eight per cent. interest after maturity and attorney's fees at the rate of five per cent.; that to secure said note of $1,200.00, and said six coupon interest notes, and said four premium notes of $66.62 each, said Melvin L. Jones and the appellee, on said 17th of March, 1890, executed to the appellant a mortgage on certain real estate described, in Delaware county, Indiana; that the mortgage provided that upon a failure to pay any of said coupon interest notes when due, the principal note for $1,200.00 should also, at the option of the appellant, become due and payable; that all of said notes, including said premium notes, were executed by the appellee as well as by said Melvin L. Jones, and were payable at a bank named in this State, and waived relief from

valuation and appraisement laws; that on the 5th of February, 1894, said Melvin L. Jones and the appellee executed to one Jacob Erther a deed for said real estate, and said Jacob Erther, then, as consideration for said real estate and deed, agreed with said Melvin L. Jones, by a contract in writing, among other things, to pay the amount of said indebtedness secured by said mortgage to appellant; that said Melvin L. Jones and the appellee and said Jacob Erther failed and neglected to pay said three notes of $84.00 each, payable January 1, 1893, 1894, and 1895, respectively, and said note for $17.96, payable March 17, 1895, and said principal note of $1,200.00, and said two premium notes for $66.62 each, payable respectively December 30, 1892 and 1893; that on the 18th of December, 1894, the appellant as plaintiff, with full knowledge of the death of said Melvin L. Jones, commenced an action against said Jacob Erther as sole defendant in the court below, and in its complaint therein, as its sole cause of action, set out and pleaded all of said unpaid notes, including said two unpaid premium notes, and said mortgage and said written contract whereby said Jacob Erther agreed to pay said indebtedness secured by said mortgage, and asked for a judgment against said Jacob Erther for the amount of all said unpaid notes, including interest and attorney's fees, and for the foreclosure of said mortgage against said real estate; that said Jacob Erther appeared in said court in said action, and on the 8th of January, 1895, filed his answer to said complaint, denying all the allegations thereof and averring that said written contract whereby he assumed said indebtedness was executed wholly without any consideration; that upon the issue thus formed a trial was had on, etc.    The complaint shows a finding and judgment in said action in favor of the appellant against said Jacob Erther per-

sonally for the recovery from him of $1,700.49, without relief from valuation or appraisement laws, and for the foreclosure of said mortgage, and the sale of said real estate to satisfy said judgment, with judgment over against said Erther; that said amount of said judgment included all of said unpaid notes, including the principal of said two unpaid premium notes and all interest and attorney's fees thereon.

The complaint shows in detail the sale of said real estate on the 27th of July, 1895, by the sheriff, under said judgment, to the plaintiff for the full amount of the judgment and interest and costs, and the issuing to the appellant of the sheriff's certificate of such sale, which the appellant still held; and it was alleged that the appellant at the same time received from the sheriff in full satisfaction of said judgment a sum stated, being the full amount due and unpaid on said judgment, including six per cent. interest from its rendition, and the appellant executed to the sheriff its receipt for said sum in full satisfaction of said judgment, and the sheriff made his return, etc. It was alleged that by said purchase said judgment and said two unpaid premium notes were wholly paid and satisfied; that by the taking of said judgment and said purchase of said real estate and the satisfaction of said judgment, the appellant waived the forfeiture of said policy because of said failure to pay said two premium notes.

The complaint contains much other matter which need not be set forth to illustrate the question in dispute on appeal.

In the policy set out in the complaint is the following provision relating to said four premium notes: "Failure to pay any one of said notes at maturity will give the company the right, at its election, to avoid this policy, with all its provisions, and the note or

notes past due at the date of the exercise of the election to cancel the policy will be payable, with interest to date of payment, as premium for the period of actual insurance up to the date of cancellation upon the books of the company, and the remaining notes, if any, will thereupon, on surrender of the policy, be surrendered to the maker."

Upon the back of the policy were certain conditions which were referred to in the policy as part thereof. In the first clause of these conditions it was provided, that "all premiums, or notes, or interest upon notes, given the company for premiums, shall be paid on or before the days upon which they become due, at the company's office in the city of Cincinnati, or to the authorized agent of the company, he producing a receipt therefor signed by the president, vice president or secretary."

In the sixth clause it was provided, that "upon the violation of any of the foregoing conditions, this policy shall be null and void, without action on the part of the company or notice to the insured or beneficiary, and all payments made thereon, and all accrued surplus of profits shall be forfeited to the company," etc.

The answer alleged, in substance, that on the 30th of December, 1892, said policy by its terms set out in condition No. 1, became null and void, by reason of the failure to pay the premium note due on that date; that said premium notes due on December 30, 1892 and 1893, both contained a condition as follows: "If this note, or any installment of interest, be not paid at maturity, said policy, with all conditions for surrender or continuance as a paid-up term policy, shall, at the option of said company, without notice to any interested party, be null and void, and said premium and accrued interest shall, without rebate or discount and without reviving said policy or any of its provisions,

be collectible without relief from valuation or appraisement laws." It was further alleged, that upon the maturity of said note due December 30, 1892, the appellant exercised the option above set out, and duly canceled said policy on its books, and thereafter, during the month of January, 1894, it duly notified the assured that said policy had been canceled and declared void, etc.

We may consider together the questions presented by both the complaint and the answer, assuming without deciding, that the condition quoted in the answer as part of each of the premium notes may be thus pleaded without setting forth the notes themselves or copies thereof.

Forfeitures are not favored by the courts. They will not declare them except in very clear cases. The conditions of the contract upon which it is sought to base a forfeiture must be strictly complied with by the insurance company. Such conditions will be construed most strongly against the company, and a forfeiture will not be enforced unless its enforcement is clearly demanded by the established rules for the construction of written contracts.

In *Masonic, etc., Assn.* v. *Beck,* 77 Ind. 203, 40 Am. Rep. 295, it was held that a distinct affirmance of the contract by the party entitled to avoid it, made with knowledge of the facts, and especially such acts as the demand and receipt of premiums or assessments, would constitute a waiver of the forfeiture or the right to annul the contract; also, that there is no reason why this waiver may not occur after, as well as before the death of the person whose life was insured. See, also, *Repogle,* v. *American Ins. Co.,* 132 Ind. 360; *Marshall Farmers' etc., Co.,* v. *Liggett,* 16 Ind. App. 598.

In *American Ins. Co.* v. *Henley,* 60 Ind. 515, where the policy was voidable at the option of the company.

during the continuance of a default of the assured in making payment of an installment of the premium note, it was said, that if the company collected the note by suit the liability of the company on the policy would be renewed.

In *Continental Ins. Co.* v. *Chew*, 11 Ind. App. 330, where the action was upon a policy of fire insurance, which provided that the company should not be liable for any loss occurring while any part of the premium was overdue and unpaid, the court said: "Although the company has a right to rely upon such default by the insured as a defense, if it, with knowledge of a loss, accepts the premium, it thereby waives the forfeiture and restores the policy to its full force and effect. Such acceptance does not simply revive the policy as to the future, but it thereby restores to it its power and force from the beginning."

In discussing a clause in a policy which provided for the suspension of the insurance upon failure to pay a premium note at maturity, the court said, that "This case differs widely from one in which the failure to pay at maturity works an absolute forfeiture of the policy. There the acceptance of the premium after forfeiture is inconsistent with the terms of the policy, and therefore it is properly held that such acceptance is a waiver of the forfeiture." *Curtin* v. *Phenix Ins. Co.*, 78 Cal. 619, 21 Pac. 370. See, also, *Mobile Life Ins. Co.* v. *Pruett*, 74 Ala. 487.

In *Union Cent. Life Ins Co.* v. *Woods*, 11 Ind. App. 335, the premium note, for the non-payment of which forfeiture was claimed, had been merged into a judgment taken by the company against the insured, and before he died more than enough of the judgment to cover such note was made out of his property which had been mortgaged to secure it and other notes. The policy provided for a forfeiture upon failure to pay

premiums when due, and that default in the payment of a premium note should entitle the company to treat the premium as earned; also, that upon failure of the insured to comply with any condition in the policy, the same was to become null and void without any action on the part of the company or notice to the insured or beneficiary.  It was said by the court, that the failure to declare a forfeiture was not a waiver, but that a waiver may be manifested by conduct as well as by words of the insurer; and the enforced collection of the premium after forfeiture, or what might have been a forfeiture, constituted a waiver; and that this was true notwithstanding any provision in the policy that the premium thus collected should be considered as premium earned.  See, also, *Michigan, etc., Ins. Co.* v. *Custer*, 128 Ind. 25; *Phenix Ins. Co.* v. *Tomlinson*, 125 Ind. 84.

Counsel for appellant suppose the question of forfeiture to have been passed upon without much deliberation in *Union Cent. Life Ins. Co.* v. *Woods, supra.*  In the view which we take of the case at bar, it does not require that we should decide whether the court, in the case last mentioned, in the language employed, relating to a policy which provides that the premium collected by suit shall be considered as premium earned, states the rule too broadly.

Where the language of the policy is susceptible of two interpretations, the one giving greater indemnity and sustaining the claim will be adopted by the court. *Union Cent. Life Ins. Co.* v. *Woods, supra.*

Where a policy contains inconsistent provisions, that which is most favorable to the assured will be adopted.  *Northwestern, etc., Ins. Co.* v. *Hazelett*, 105 Ind. 212.

In the case last cited, in one clause of the printed conditions of the policy, intemperance to the degree of

impairment of health or of inducing delirium tremens worked an absolute forfeiture.  In another clause the result of the same conditions was that the company might cancel the policy and thereby absolve itself from liability except for the surrender value.  It was held that the provision most favorable to the assured should be adopted, and that an answer of the insurance company setting up the intemperance of the assured, which did not aver that it had absolved itself from liability by canceling the policy, was bad on demurrer.

In the case at bar, the policy and the premium notes constituted parts of one contract.  The various conditions relating to non-payment of the notes were not consistent with each other.  The condition most favorable to the insured was that upon the face of the policy, which gave the company the right, at its election, upon failure to pay a note at maturity, to avoid the policy, and which provided that when it should exercise the election to cancel the policy the note or notes then past due should be payable as premium up to date of cancellation on the books of the company, while the remaining notes, if any, should thereupon be surrendered to the maker, on surrender of the policy.

The appellant was bound strictly by this condition. It could not avoid the policy because of the non-payment of any note or notes at maturity, except by pursuing the method thus provided by itself in the policy.

In order to defeat an action upon a policy of insurance on the ground that the policy has been canceled, it must be shown either that the conditions upon which the company was allowed to cancel the policy were strictly complied with, or that the assured, knowing all the facts, waived such compliance.  *Quong Tue Sing* v. *Anglo-Nevada Assur. Corp.,* 86 Cal. 566, 25 Pac. 58, 10 L. R. A. 144.

It was for the company to show that it had pursued the proper method for the forfeiture of the policy, and it did not devolve upon the appellee to show in her complaint that the company had not done so.

The answer says that upon maturity of the note due December 30, 1892, the company canceled the policy upon its books, and that in January, 1894, it notified the assured that said policy had been canceled and declared void.

Giving the provisions of the contract full effect, the company would not have the right, after cancellation of the policy at maturity of the third note, to collect any unpaid premium except that represented by the third note. If by such cancellation the policy became forfeited and thenceforward null, of course the company would not have the right to collect the fourth note, which was then not due.

There was but one way in which the policy could be forfeited for non-payment of any note. To do so, it was necessary for the company to exercise its election to cancel the policy. The policy never was forfeited in the manner prescribed for non-payment of any note except the third.

After pursuing the *ex parte* method of cancellation for non-payment of the third note, as shown by the answer, the company, without taking any like measures with reference to the fourth note, enforced the full payment of both the third and fourth notes, as shown by the complaint. It treated its own action with reference to the third note as ineffectual for the cancellation or annulment of the policy.

It had no right, by the terms of the contract, to collect the fourth note, unless there was an exercise of the right to elect to cancel the policy after the maturity of that note.

By enforcing collection, as it did through its fore-

closure proceedings, it ignored the only cancellation upon its books, and waived the forfeiture of the policy for non-payment of the two premium notes so collected. It cannot be expected that the court should treat the cancellation as effectual which was thus treated by the insurer. The policy was not rendered absolutely void by the non-payment of the premium notes at maturity. The policy, according to its terms, was voidable only, and that, too, by the exercise of the election to cancel it upon the books of the company. The provision which gave the company that right contemplated that any premium notes not then due should not be collectible. The company, instead of pursuing the method of forfeiture prescribed strictly, as it was bound to do, treated the policy as still in force, notwithstanding the cancellation on the books.

We are unable to find error in the rulings on the demurrers. The judgment is affirmed.