## UNION MUTUAL LIFE INSURANCE COMPANY
### *v.* ADLER.

[No. 5,186.   Filed March 17, 1905.   Rehearing denied November
3, 1905.   Transfer denied June 29, 1906.]

1. PLEADING. — *Complaint.* — *Theory.*—*Sufficiency.*—A complaint
drawn upon a definite theory should be good upon such theory,
or is bad on demurrer.   p. 536.

2. INSURANCE.—*Life.*—*Extension Tables.*—*From What Date Cal-*
*culated.*—The table of extended insurance in a twenty-payment
life policy, granting 7 years and 235 days' insurance upon the
payment of three premiums, means 7 years and 235 days from
the date of the policy and not from the date of lapse, such ex-
tension from the date of lapse being unreasonable.   Roby, J.,
dissenting.   p. 536.

3. SAME.—*Premiums.*—*When Payable.*—A twenty-payment life
policy providing for the payment of the first premium in ad-
vance and for a like amount annually thereafter for twenty
years, requires such following annual premiums to be made in
advance.   p. 537.

4. SAME.—*Premiums.*—*Period Covered by Payments of.*—*Debts.*
—The payment of the annual premium on a life policy con-
tinues the insurance upon assured's life for such year and gives
him the right to continue such payments at the same rate, and
such premiums do not constitute a debt.   Roby, J., dissenting.
p. 538.

5. PLEADING. — *Complaint.* — *Insurance.* — *Life.* — *Extension.*—A
complaint for the recovery of insurance, alleging that plaintiff's
decedent duly paid four annual premiums on a twenty-payment
life policy, by which he secured an extension of such policy for
10 years by virtue of the table of extended insurance, and that
decedent died within such time, shows that such policy was
alive at decedent's death.   p. 538.

6. BILLS AND NOTES.—*Negotiable.*—*Payment.*—*Presumptions.*—
There is a disputable presumption that a negotiable note is a
payment of the debt for which it was given.   p. 539.

7. INSURANCE.—*Life.*—*Premiums.*—*Payment.*—*Bills and Notes.*
—The failure of assured to pay his negotiable note, conditioned
that if not paid when due the policy, for whose annual premium
such note was given, lapses as for nonpayment of premium,
does not keep such policy alive as a payment of such premium.
pp. 539, 540.

8. INSURANCE.—*Forfeiture.*—*When Enforced.*—Forfeitures are odious, but will be enforced where there is no reasonable excuse for the default.  p. 539.

9. SAME.—*Premiums.*—*Notes Given for.*—*Election.*—The payment of a negotiable note, given for an annual premium on a life policy, and providing that if not paid at maturity such policy lapses as for nonpayment of premium, is optional with the assured and not with the insurer.  Roby, J., dissenting. p. 540.

From Warrick Circuit Court; *E. M. Swan,* Judge.

Action by Hiram J. Adler, as administrator of the estate of Leopold Adler, deceased, against the Union Mutual Life Insurance Company.  From a judgment for plaintiff, defendant appeals.  *Reversed.*

*John E. Iglehart, Edwin Taylor* and *Eugene H. Iglehart,* for appellant.

*Edwin C. Henning, Charles A. Weathers, Howard S. Young* and *Sol. H. Esarey,* for appellee.

COMSTOCK, C. J.—The amended complaint was in three paragraphs, each upon a policy of insurance issued by appellant to Leopold Adler.  Action was commenced in the Superior Court of Vanderburgh County, and upon change of venue tried in the Warrick Circuit Court.

It is alleged in the first paragraph of complaint that Hiram J. Adler, plaintiff, is administrator of the estate of Leopold Adler, deceased; that said defendant was and is a corporation created, organized, and existing under and by virtue of the laws of the state of Maine; that on July 31, 1893, in consideration of the payment of the premium of $97.80 annually for a period of twenty years, unless death should sooner occur, said defendant executed its policy of insurance in writing (a copy of the policy is made a part of the complaint as an exhibit) to Leopold Adler on his life in the sum of $3,000; that as a further consideration for said policy of insurance it was agreed by and between said defendant and said Leopold Adler that should

said Leopold Adler pay to said defendant three annual premiums of $97.80 each in cash before lapse in payment of premiums, then said policy of insurance would be secured in force for the sum of $3,000, and for a period of 7 years and 235 days without any further payment of premium thereon; that prior to the death of said Leopold Adler said decedent paid to said defendant three annual premiums of $97.80 in cash on said policy, and thereupon ceased to pay any further premiums on said policy; that by reason of said three payments in cash of said three annual premiums on said policy, the last of which was made to and paid to said defendant on July 15, 1895, said policy of insurance was secured and continued in force for a period of 7 years and 235 days; that before the expiration of and within said 7 years and 235 days said Leopold Adler departed this life, to wit, December 20, 1901; that said decedent, Leopold Adler, and said plaintiff each duly performed all conditions of said policy on their part to be performed; that said plaintiff on December 6, 1902, gave the defendant due notice and proof of death of said Leopold Adler, and demanded payment of said policy; that said defendant on December 30, 1902, refused to pay said policy, and still refuses to pay the same, and no part of it has been paid. Wherefore he demands judgment against defendant in the sum of $3,255.

The second paragraph of complaint differs from the first in the averment of the payment of four annual cash premiums instead of three, and consequently a longer extension.

The third paragraph sets out the exact manner of making payment of the fourth annual premium, the giving of the note, and treating it as payment of premium under the law. An extension of the insurance under the policy for 10 years and 116 days it is claimed was secured.

A copy of the policy is made a part of each paragraph. A demurrer to each paragraph for want of facts was over-

ruled. The motion to make more specific said first, second and third paragraphs of complaint was overruled.

The defendant answered in three paragraphs. The substance of the first is contained in the second and third, so far as the issue relates to an extension of the life of the policy under the Maine nonforfeiture law and the construction of the table, exhibit A of each paragraph of the complaint. The table is again set out in the answer, and it is averred to be the agreement and provision contained in said policy upon which plaintiff relies in his amended complaint. The table is averred to be the calculation under the Maine nonforfeiture law, which shows the period for which said insurance was secured after the payment of three or more annual premiums thereon, as provided by said law; and it is under the provisions of said law and under the table calculated thereunder, indorsed on said contract of insurance and part of said policy sued on, that the plaintiff claims the securing in force of said policy for a period longer than the period for which premiums were actually paid thereon. Said paragraph also sets out *in haec verba* the written and printed application as a part of the consideration for the insurance contract. It avers the payment of only three premiums, and "that at the death of said Leopold Adler the term of life of said policy, as determined according to the Maine nonforfeiture law, according to the age of the insured, which is averred, and the assumption of mortality and interest, as set out in said law, was a period of 7 years and 235 days from the date of said policy, and not from the date of lapse, at the end of which period any and all right existing in said Leopold Adler, or in the plaintiff as his administrator, under and by virtue of said full payment in cash of the first three annual premiums due upon said policy ceased and determined, and said Leopold Adler or the plaintiff was entitled to no further extension of time thereon, but at the expiration of said period * * * said policy became wholly

void." It is also averred that said full period of time had expired before the insured died, and said policy was not in force at his death. The issue tendered by said first paragraph is also tendered in the second paragraph of the answer, but as to the distinguishing averment of the second paragraph of the complaint, that four annual premiums had been paid, the second paragraph of the answer denies the fact, and avers that only the first three premiums were ever paid. In other respects the second is a copy of the first paragraph of the answer.

The third paragraph of the answer contains all of the material averments of the first, and in addition deals with the questions which plaintiff seeks to raise by pleading his evidence—the note which was given for the fourth premium. It denies payment in cash of the fourth premium, and denies the loan of any money, as averred in the complaint. After setting out the Maine law, the table under that law, and the application, the answer continues: "Defendant further avers that the intention of the parties to said contract of insurance, apparent from all said writing, including the note hereinafter set out, which was executed under the provisions of said Maine nonforfeiture law, was and continued to be that if at any time said decedent elected to refuse to pay said annual premium required as a consideration of said policy, or any note given therefor, the said policy should cease to be in force except as it might be extended by the nonforfeiture law as herein set out, or in case a note was given for any premium except as provided therein."

Upon the subject of the note in the transaction the answer continues: "Defendant further avers that when the fourth annual premium upon said policy became due said Leopold Adler did not pay said premium, but at his request the defendant allowed him to give his note for the amount of said premium, payable in three months from date, which note is in words and figures as follows, to wit:

'$97.80                Evansville, Indiana, July 15, 1896.

For value received by a loan on a policy No. 104,557, issued by the Union Mutual Life Insurance Company, three months after date I promise to pay to the order of said company $97.80 at Evansville, Indiana, German Bank.

This note is given on account of said policy, and unless paid when it becomes due said policy then lapses as for nonpayment of premium when due.
No. 7,547.                                Leopold Adler.
                                                C-o Adler Bros.
Due October 15, 1896.'

That thereupon said insurance under said insurance policy was carried for a period of three months previous to the maturity and nonpayment of said note; that said note at its maturity was wholly unpaid, and has never been paid, and when the same became due payment was demanded by the defendant of said Leopold Adler, who then and there refused to pay said note, and the defendant thereupon notified said Leopold Adler that said policy was then and there determined and lapsed, and thereupon defendant canceled said note, and stamped the cancelation thereon, and held the same for naught, and this is the retention of the note mentioned in the complaint. And defendant tenders said canceled note to plaintiff, and defendant denies that it loaned any money to plaintiff's intestate as averred in the complaint, or that said fourth annual premium was paid in cash or secured except by said note."

Plaintiff's demurrer to each paragraph of answer was sustained. Defendant excepted, and refused to plead further, upon which the court rendered judgment for the plaintiff on demurrer for $3,077. On December 22, 1903, defendant excepted and prayed an appeal.

The errors assigned are the overruling of the demurrer to the first, second and third amended paragraphs of complaint, and each of them; the overruling of a motion to make the first, second and third paragraphs of

the complaint, and each of them, more specific; and sustaining the demurrer to the first, second and third paragraphs of the amended answer, and each of them.

The question raised by the demurrer to the first paragraph of the complaint is whether the extension under the table—exhibit A—based upon the Maine nonforfeiture law, is calculated from the date of the policy or the date of the lapse in the payment of premiums. The same question is raised by defendant's answer to the first paragraph of the complaint, which sets out the Maine nonforfeiture law as far as it relates to the matter in controversy.

The substance of the first paragraph of the answer is contained in the first and second as far as the issue relates to an extension of the life of the policy under the

1. Maine nonforfeiture law and the construction of the table, exhibit A, of each paragraph of the complaint. It is the theory of the first paragraph of the complaint that by the payment of three annual premiums in cash insurance under the policy was secured and continued in force for 7 years and 235 days from the date of the lapse in payment of premiums. This theory is definitely expressed. The paragraph should be good upon this theory or not at all. *Cleveland, etc., R. Co.* v. *Dugan* (1898), 18 Ind. App. 435, and cases cited.

2. In this claim of appellee we cannot concur. The following is the language of the policy:

"In consideration of the written and printed application for this policy which is made a part of this contract, and of the payment in advance of $97.80, and of the payment of the same amount yearly thereafter, at the office of the company in Portland, Maine, on the 15th day of July in every year (provided that when premiums for twenty full years have been fully paid no further premiums will be required) it is promised to pay to Leopold Adler, or his executor, administrators or assigns, at the office of the company in Portland, Maine, $3,000, on satisfactory proofs of death of said Leopold Adler of Evansville."

The table which is a part of the exhibit shows that when three years' premiums are paid in cash before a lapse, insurance is secured under the policy for 7 years and 235 days. The extension of the insurance upon the three payments is only given by virtue of the table. The extension of the insurance after the payment of the premiums has ceased is based upon this table. The table alone provides for an extension of insurance, and from it we must determine from what time the insurance is secured for the 7 years and 235 days named.

If the theory of appellee is correct, the payment of three years' premiums would give an insurance of eleven years; of four, fourteen years; of five, sixteen years, etc. When it is remembered that the company is dependent upon the receipt of premiums for the money with which death losses are to be paid, the construction for which appellee contends seems unreasonable.

The policy, bearing date of July 31, 1893, and the written application, July 28, 1893, provide for the payment in advance of $97.80, and of the payment of the same amount yearly thereafter at the office of the company in Portland, Maine, on July 15. The first premium to be paid in advance, and subsequent premiums to be paid annually thereafter on the day fixed in every year, clearly requires the payment of the annual premiums in advance.

"The contract of life insurance is *sui generis*. It is one-sided. By the strict observance of the conditions of it, the insured may hold the insurers to their contract, while they have not the power or right to compel him to remain in contract relations with them longer than he chooses." *Roehner* v. *Knickerbocker Life Ins. Co.* (1875), 63 N. Y. 160, 167.

By the payment of the first premium the insured effects an insurance upon his life for one year, and purchases a

right to continue that insurance from year to year during life at the same rate. Whether he will continue or not is optional with him. The premium for the first year pays for the risk during that year, and for the right to subsequent insurance, but there is no obligation to pay further premiums. They do not constitute a debt. *Worthington* v. *Charter Oak Life Ins. Co.* (1874), 41 Conn. 372, 19 Am. Rep. 495.

The second paragraph of the complaint alleging the payment when due, in cash, of four annual premiums is good on demurrer as showing an extension of the insurance over ten years under said table. In this connection it is proper to say that the answer to the second paragraph of the complaint denies the payment of four premiums, and alleges that only three were ever paid. The court erred in sustaining the demurrer to the second paragraph of answer.

The third paragraph of complaint alleges, as heretofore stated, that the deceased paid the fourth annual premium in cash by obtaining a loan of $97.80 on his policy from said defendant; that the proceeds of said loan, to wit, $97.80, were applied by said decedent and said defendant to the payment of said fourth annual premium on said policy; that in consideration of said loan of $97.80 from said defendant said Leopold Adler executed and delivered to said defendant his promissory note for $97.80, payable to said defendant and negotiable at the German Bank of Evansville, Indiana, which note is hereinbefore set out.

In its third paragraph of answer appellant avers that when the fourth annual premium on said policy became due said Leopold Adler did not pay said premium, but at his request the defendant allowed him to give his note for the amount of said premium, payable in three months from date, which note is the note hereinbefore set out; that thereupon said insurance was carried for a period of three months previous to the maturity and nonpayment of said

note, but that said note has never been paid, although the same was demanded by the defendant of said Leopold Adler, who then and there refused to pay the same, and defendant notified said Adler that the policy was then and there determined and lapsed, and the defendant canceled said note and stamped the cancelation thereon, and now tenders said canceled note in court to plaintiff, and defendant denies that it loaned any money to plaintiff's intestate as averred in the complaint, or that said fourth annual premium was paid or secured except by said note.

6. The acceptance of a promissory note payable in bank is presumed to be payment, but if it is agreed at the time of its execution it is not to be accepted as payment that presumption is overcome.

7. The note in question specifies that it is given on account of the policy, and unless paid when it becomes due such policy lapses as for nonpayment of premium when due. It is thus expressly agreed that the note was not accepted as payment. The payment of the note is made the test of the final payment of the premium. The failure to pay the note may not, in the absence of a provision in the policy for a forfeiture, work a forfeiture, yet it cannot be fairly held to have kept the policy alive as a payment. The decedent was bound by the entire note. Whatever right it gave him upon its execution was lost by its very terms by his failure to pay it at maturity. He could gain nothing by his own default.

8. It has many times been said by the courts that forfeitures are not favored, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good ground in the conduct of the other party on which to base a reasonable excuse for the default. *Thompson* v. *Knickerbocker Life Ins. Co.* (1881), 104 U. S. 252, 260, 26 L. Ed. 765.

The appellant could not compel the continuance of the insurance, and could not, therefore, compel the payment

of premiums, nor by the same reasoning could a note given for the premiums be collected. The failure to pay the note is by its terms the failure to pay the premium. Had the note been a simple promissory note in the ordinary form it is possible that the insurance company would have had an option either to surrender the note and avoid the policy, or continue the policy and collect the note; but the rights of the parties are restricted by the conditions of the note, and the option as to its payment was with the insured, because the option of continuing the insurance was with him.

Said paragraph of answer further denies that appellant loaned any money to plaintiff's intestate, or that said fourth annual premium was paid in cash or secured except by said note. In any event the only effect of the note could be, whether for a loan or otherwise, to keep the policy alive pending the maturity of the note, and which, if not paid, by its terms, was a failure to pay the fourth premium, leaving the rights of the parties to depend upon the terms of the contract of insurance and the extension under the Maine nonforfeiture law as for payment of three premiums only, which time had expired at the death of the insured.

The law will not exact from one party to a contract its full performance or its full penalty when the other contracting party, without good reason, fails to comply with the terms upon which his rights must depend. Whether in the case at bar the payment of the annual premiums was a condition precedent or subsequent, the right of the assured was based upon their payment according to the terms of the contract.

The judgment is reversed, with instructions to sustain the demurrer to the first paragraph of the complaint, and overrule the demurrers to the first, second and third paragraphs of the answer.

Robinson, P. J., Black, Wiley and Myers, JJ., concur. Roby, J., dissents.

## ON PETITION FOR REHEARING.

COMSTOCK, J.—In this cause it appears from the view taken by the majority opinion of the facts as presented by the record that an attempt is made to enforce a contract without complying with its terms, and without the performance of the conditions upon which it is based. The petition for rehearing is overruled. We cite the cases of *Sharpe* v. *New York Life Ins. Co.* (1904), 5 Neb. (Unofficial) 278, 98 N. W. 66, and *New York Life Ins. Co.* v. *Meinkens* (1904), 25 Ky. Law Rep. 2113, 80 S. W. 175, to which our attention had not been called when the original opinion was written.

## DISSENTING OPINION.

ROBY, J.—It is averred in the first paragraph of amended complaint that the defendant is a corporation organized under the laws of the state of Maine, and that on July 31, 1893, it executed its policy of insurance upon the life of plaintiff's decedent, for the sum of $3,000, for the consideration of the payment of the premium of $97.80 annually for a period of twenty years, unless death should sooner occur; that, as a further consideration, it was agreed that should the assured pay three annual premiums in cash before lapse in the payment of premiums, then such policy would be secure for 7 years and 235 days without any further payment. By virtue of said agreement the policy sued on, which is made an exhibit, was in force at decedent's death on December 20, 1901, he having paid the first three premiums thereon.

Much has been said in argument about the "Maine non-forfeiture law." The theory of the complaint is that the appellee company contracted to extend the obligation of its policy for the time named, if a lapse in payment occurred after three full premiums had been paid.

The contract is in writing. It is to be construed as other contracts of insurance, and where the language used is susceptible of different interpretations, or is doubtful, that meaning which affords the greatest indemnity, and is in the interest of the assured, must be adopted. *Union Cent. Life Ins. Co.* v. *Jones* (1897), 17 Ind. App. 592, 600; *Union Cent. Life Ins. Co.* v. *Woods* (1894), 11 Ind. App. 335; *Franklin Life Ins. Co.* v. *Wallace* (1884), 93 Ind. 7, 11.

In construing this contract, the laws of Indiana are applicable. *Kline* v. *National Benefit Assn.* (1887), 111 Ind. 462, 60 Am. Rep. 703; *Franklin Life Ins. Co.* v. *Wallace, supra; Northwestern, etc., Ins. Co.* v. *Little* (1877), 56 Ind. 504; *Supreme Lodge, etc.,* v. *Meyer* (1905), 198 U. S. 508, 25 Sup. Ct. 754, 49 L. Ed. 1146.

It may be that the terms of the policy were selected by the appellant because of the law of that state in which it is incorporated, or it may have been led to make such selection by the necessities of competition, but the reason, whatever it may have been, is immaterial, the rights of the parties being determinable by the terms of the contract which they have made.

The policy contains a table of which the following is a part:

| "Number of years premiums paid in cash before lapse. | Maine nonforfeiture law. Insurance under this policy secured for | |
|---|---|---|
| | Years | Days |
| 3 | 7 | 235 |
| 4 | 10 | 116 |
| 5 | 13 | 6 " |

The object of the table is to notify the assured in advance of the length of time during which his insurance is effective after a lapse in payment of premiums. As long as premiums are paid the insurance is in force without reference to any table. After the payment of three premiums the assured who ceases to pay is given protection for a length

of time fixed by reference to the amount paid by him in excess of the value of the protection which has been furnished prior to his failure thus to pay. The amount of such excess is determined by reference to the tables of mortality. Courts take judicial notice of both mortality and multiplication tables, and the time of extension in any given instance becomes therefore a matter of mere computation. The assured paid altogether $293.40, as averred in the first paragraph of complaint. This amount was paid in three annual instalments on a twenty-payment life policy. At the end of the third year the reserve due to him was $153.96, allowing $26.01 out of each premium for the expenses of the company made necessary by handling this business, an allowance which is no doubt excessive. The sum of $153.96 buys and pays for a nonparticipating, paid-up $3,000 life insurance policy for the term of 6 years and 111 days. If the term specified in the table had been stated as 6 years and 111 days it would be exactly in accordance with the above computation, including the amount set aside for expenses. Whatever amount less than $26.01 per year was deducted from expenses in making the actual computation upon which the table referred to is based would swell the fund available to buy paid-up insurance, and a very slight reduction in that item would result in extended insurance from the end of the third year of 7 years and 235 days.

The deduction for expenses was fixed by the company, and I am not disposed to attribute to it the segregation of a larger amount than its figures render necessary. The purpose of the table is to convey information to the person insured, or proposing to insure, relative to the term of extended insurance. It is not stated in the policy whether the extension dates from the end of the year for which payment is made, or from the time the policy was written, except as the purpose of printing the table of necessity implies carrying beyond the end, an inference which accords

with the custom of life insurance companies in printing such tables.

The terms of the contract are, to say the least, ambiguous and uncertain in this regard. It therefore becomes the duty of the courts to construe it, and such construction, under the familiar rule above stated, requires that the extension be dated from the end of the third year. The table as printed, if otherwise construed, is upon its face misleading and deceptive, and calculated to operate as a fraud upon the insured. No one is permitted ʼto take advantage of his own wrong, nor will acute distinctions be drawn to aid in undoing the unwary; but a construction is always preferred which is according to the nature and intent of the thing.

The assured departed life 5 years and 155 days after the end of the third year. Something has been said about the unreasonableness of this extension. Results reached by mathematical computations based upon the multiplication and mortality tables are not usually put aside by the courts upon the mere statement that they are unreasonable. Indeed, the impressions of uninformed individuals are sometimes corrected by figures.

The second paragraph of complaint avers the payment of four cash payments. The answer denies the payment in cash of the fourth premium, and avers the execution of a note therefor dated July 15, 1896, and due three months after date, containing the provision that "this note is given on account of said policy, and unless paid when it becomes due said policy then lapses as for nonpayment of premiums when due," that thereupon said insurance was carried for a period of three months previous to the maturity and nonpayment of said note, and that said note has never been paid.

Forfeitures aré not favored; they must be clearly and explicitly stipulated, and will not be inferred. *Home Ins. Co.* v. *Marple* (1891), 1 Ind. App. 411; *Glass* v. *Murphy*

(1892), 4 Ind. App. 530, 536; *Bell* v. *Hiner* (1896), 16
Ind. App. 184; *Phenix Ins. Co.* v. *Lorenz* (1893), 7 Ind.
App. 266; *Union Cent. Life Ins. Co.* v. *Jones* (1897), 17
Ind. App. 592, 598.

There is no provision in the policy under consideration
for its forfeiture on account of nonpayment of premium, or
for any other reason.   In the light of the principles enunci-
ated by the above authorities, no provision for such for-
feiture can be read into it by any one.   *Ohio Farmers Ins.
Co.* v. *Stowman* (1896), 16 Ind. App. 205.

The note only provides for such lapse as is previously
specified in the policy; and there being no such specifica-
tion the provision in the note is inoperative, nugatory, and
of no avail.   *Dwelling-House Ins. Co.* v. *Hardie* (1887),
37 Kan. 674, 16 Pac. 92; *Drury* v. *New York Life Ins. Co.*
(1903), 115 Ky. 681, 74 S. W. 663, 61 L. R. A. 714, 103
Am. St. 351.

The answers are drawn upon the evident theory that the
failure of the assured to pay the note at maturity *ipso
facto* released appellant from all liability upon the policy.
This theory does not accord with the facts exhibited.   If
the note is valid in appellant's hands then it cannot deny
the receipt of the fourth annual premium.   *McEvoy* v.
*Nebraska, etc., Ins. Co.* (1896), 46 Neb. 782, 65 N. W. 888.

Collection of this note from Adler's estate would fix the
company's liability on the policy.   *Phenix Ins. Co.* v.
*Dungan* (1893), 37 Neb. 468, 55 N. W. 1069; *Phoenix
Ins. Co.* v. *Lansing* (1884), 15 Neb. 494, 20 N. W. 22;
*Schoneman* v. *Western, etc., Ins. Co.* (1884), 16 Neb. 404,
20 N. W. 284; *Phenix Ins. Co.* v. *Rollins* (1895), 44 Neb.
745, 63 N. W. 46.

It appears from the averments of the answer that the
appellant, in consideration of said note, carried the insur-
ance for three months.   This being the case there is no
failure of consideration, and the appellee's estate has been
at all times liable for the payment of said sum.   Even if the

policy had contained a provision for forfeiture, and the recital in the note therefore been effective, it would still have been competent for appellant to retain and collect the note. *Phenix Ins. Co.* v. *Tomlinson* (1890), 125 Ind. 84, 9 L. R. A. 317, 21 Am. St. 203.

Where the policy contains no provision for a forfeiture, and the note in itself is not effective to that end, mere non-payment does not supply such provision of the policy.

I have thus stated a few of the numerous reasons why there should be a rehearing granted in this case.