ALLEN, SAFFORD & Co. *v.* THE VERMONT MUTUAL FIRE
INSURANCE COMPANY.

If a policy of insurance, executed by the Mutual Fire Insurance Company, is obtained upon the suppression of a fact in the application, which was material to the risk, a subsequent reception, by the company, of an instalment on the premium note of the insured, can have no effect to render the policy binding upon the company, in a case where neither the company, nor their agent, had notice of the existence of the fact suppressed.

ASSUMPSIT, on a policy of insurance to recover damages for the destruction of the plaintiff's cotton factory by fire.

Plea, *non-assumpsit.*  Issue to the country.

Upon the trial in the county court, the plaintiffs gave in evidence their application, made in writing, to the defendants, for an insurance upon their cotton factory, in which application the dimensions of the factory building, materials of which it was built, number of stoves used, &c., were particularly described; but the application did not contain any description or statement of an apparatus for manufacturing sizing, erected in said factory building.

The application was signed by Allen, Safford & Co., and

BENNINGTON,
*February*,
1840.

Allen, Safford
& Co.
*v.*
The Vt. M. F.
Insurance Co.

countersigned by J. N. Hinsdale, agent of said insurance company. The plaintiffs also gave in evidence the policy of insurance, declared upon, in which reference was made to the plaintiffs' application for a more particular description of the property insured, and as forming a part of said policy.

It was admitted that there was, at the time of said application, and continued to be to the time of the destruction of said building by fire, an apparatus, in the fourth story of said building, consisting of a kettle set in brick work over an arch, in which fire was used for the purpose of generating steam for the manufacture of sizing, which apparatus was used for that purpose during the period above mentioned, sometimes once and sometimes twice in a week, from one to two hours at each time, and, on one occasion, viz. ; on the day preceding the fire, it was used once or twice in the course of the day ; that the plaintiffs made the sizing in the afternoon of that day ; that such sizing was an indispensable article in manufacturing cotton cloth, and that such an apparatus for making it, in factories of the size of the plaintiffs', was usually placed, with the dresser, in such part of the factory building as convenience required.

On this point the defendants insisted and requested the court to charge the jury, that the omission, on the part of the plaintiffs, to disclose the existence of the sizing apparatus, did, in law, make the contract of insurance void ; but the court decided and charged the jury, that such an omission did not vitiate or make void the contract, unless the existence of said apparatus, was, in the opinion of the jury, material to the risk.

Testimony was introduced, on the part of the plaintiffs, tending to show that the risk was not enhanced by said apparatus, and, on the part of the defendants, testimony was introduced tending to show that the destruction of the factory, by fire, was caused by the use of said apparatus on the day previous to its destruction.

The plaintiffs also offered in evidence the vote of the directors of said company, passed on the second day of February, 1836, which was objected to by the defendants and admitted by the court, which vote is as follows :

" Voted : That a member be appointed to go and examine ' the loss at Bennington, and to examine the factories as to

BENNINGTON,
February,
1840

Allen, Safford
& Co.
v.
The Vt. M. F.
Iusurance Co.

"their safety and internal construction.    Thomas Reed, Jr.,. "appointed."

The plaintiffs also introduced testimony tending to show that the person so appointed, in pursuance of said vote, visited Bennington and examined the factories there and that, subsequently, the defendants received of the plaintiffs an instalment or call of forty four dollars on the policy in question. This testimony was objected to by the defendants, but admitted by the court.

The destruction of the factory, by fire, during the term of the policy, was admitted, and the amount of the loss was agreed upon by the parties.

In relation to the vote of February 2, 1836, and of the proceedings of the agent under it, the court charged the jury that if the agent of the company, in pursuance of such vote,. went to the factory in question, and the company afterwards received the instalment of forty four dollars, the defendants were liable in this action, although the jury might believe that the sizing apparatus was material to the risk and had been omitted in the application.

The jury returned a verdict for the plaintiffs and the defendants excepted.

Other important questions, than those above stated, were presented in the bill of exceptions, but, as they were not decided by this court, they are omitted in the statement of the case.

*A. Spaulding*, for defendants.

I. The vote of the directors of the 2d February, 1836, and evidence of their receiving an instalment, was not evidence proper to go to the jury.

This evidence was perfectly irrelevant and had nothing to do with the case. It was the mere *ex parte* act of the directors. There is no evidence that Reed had any knowledge of the existence of the sizing apparatus, or that he went to this factory.

The directors could not, by any act of theirs, make that good which was void in the inception. The risk insured against, was not this risk. This evidence tended merely to mislead the jury. This proceeding of the directors was a mere common every day occurrence. It was a measure of

precaution, on their part, to enable them to determine whether to cite in the plaintiffs and others, to show cause why their policy should not be cancelled. The object of the vote was not to direct the agent to ascertain whether the insured had made a fair representation in their application, or whether they had *concealed* material circumstances, but it was to ascertain whether the insured were acting in good faith towards the company in securing their fires, &c.

The insured knew nothing of the appointment of the agent, whose main business was to settle a loss which had happened at Bennington, and, while there, he was to look around among the factories, generally, to see whether the owners were careless or not. This evidence could have no other effect in the case than to mislead the jury, and should have been rejected. Besides, there was no evidence that the agent ever made any report to the board of directors.

II. There is error in the charge of the court in relation to the vote of February 2, 1836, and the proceedings of the agent under it.

1. Because the contract was a void one, and no after proceedings of the board of directors could make it good.

2. The charge places the right of the plaintiffs to recover upon the point, whether the agent *went to the factory or not*. Now it strikes us to be perfectly immaterial whether the agent went to the factory or not, unless he discovered the sizing apparatus, and reported that fact to the board of directors. Suppose the agent, in pursuance of said vote, went to the factory, merely, and made no enquiries or examinations, and never made any report to the board of directors, would this journey of the agent make the company liable for a subsequent loss, which was the result of some fraudulent act or concealment of the plaintiffs prior to this journey? If so, the vigilance of the board is made use of to the prejudice of the company. The directions to the agent were, to examine the factories as to their safety and internal construction; not to examine whether there were more fires in the building than the insured had the right to keep, by the terms of the policy. The agent could not determine this fact unless he had the policy itself to look at.

*J. S. Robinson* and *W. S. Southworth*, for plaintiffs.

The evidence of the vote of the company, of February 2,

Vol. xii.  w. r. vol. ii.  47

BENNINGTON,
*February,*
1840.

Allen, Safford
& Co.
*v.*
The Vt. M. F.
Insurance Co.

Bennington,
Felruary,
1840.
Allen, Safford
& Co.
v.
The Vt. M. F.
Insurance Co

1836, and of the proceedings under it, was correctly admitted, and the charge of the court, in relation thereto, was correct.

1. The testimony was material, as tending to show that the apparatus, omitted in the application, was not material,or that the defendants had, in some other way, come to the knowledge·of it, and had taken it into the account in estimating the risk.

2. It was most important, as tending to show a waiver of the objection, an approval, by the directors, of the policy, with a full *knowledge of the existence of the article.omitted.*

Here was an agent. Notice to him was notice to the principal. Paley on Agency, 199, 203. 1 T. R. 16. 4 Term. R.66. 1 Esp. R. 290.

The defendants, when they have received a full knowledge of the facts, will not be permitted to treat the policy *valid* at one time and void at another, as it may suit their interest.

In analogous cases, similar acts are always treated as a waiver of the objection and an affirmance of the contract.

Thus, an infant's contract is voidable, but, if when he comes of age, he receives interest on the consideration of the contract, he affirms it. 1 Vern. 132. 1 Atk. 489. 6 Conn. 494. So if he refuses within a reasonable time to disaffirm it. 2 Kent's Com. 195.

The acts of the agent, beyond his authority, are adopted by the principal when he receives the benefit of such acts. *Foot* v. *Sabin,* 19 Johns. 184.

So of the contracts of a partner out of the scope of the partnership business. 5 Conn. R. 575. 6 Vt. R. 257.

A landlord waives his notice to quit, when he accepts rent which accrued after the time when the tenant was notified to quit. 1 Selw. N. P. 582. 1 H. Bl. 311. 6 Term R. 219. And he waives a forfeiture when he receives rent accruing after condition broken. Selw. N. P. 584. 1 Binn. 333.

*S. S. Phelps,* for defendant, in reply.

The court erred in their charge to the jury in relation to the defendants' agent visiting the factory, under the vote of February, 1836. For,

1. No proceeding of that kind, intended by the defend-

ants merely for their own security, would have any effect up-
on the contract if it were originally void by reason of fraud.

2. If the contract could be set up by the defendants' receiv-
ing instalments afterwards,upon the ground that the objection
was waived, still, it is indispensable to that purpose that the
defendants *have knowledge of the facts suppressed.*

The charge, in this respect, is radically wrong, as the jury
were told that if the *agent visited the factory* and the com-
pany afterwards received the instalment, they were bound.
The jury should have been told that such proceeding would
not have that effect, unles the company, or at least, their
agent, had knowledge before the instalment was received, of
the fact *suppressed.* The court proceeded upon the ground
that the objection was waived by the defendants. But how
could the objection be waived if the fact were not known?

The opinion of the court was delivered by

Bennett, J.—This case involves several important ques-
tions, and some of them are not without considerable diffi-
culty. It has been argued at great length and with much
ability ; but, from the shortness of the time allowed us for
an examination, we are not prepared, at this time, to come to
a conclusion on all the questions which the case presents.
There is, however, one point upon which the court are all
satisfied that the defendants must have a new trial, and we are,
therefore,induced to decide the case on that single point, leav-
ing all other questions open. It seems after this policy had
been executed, and after the company had sustained a loss
on some other factory, insured by them, at Bennington, the
company passed a vote, directing that a member of the com-
pany should be appointed to go and examine the loss at
Bennington, and also examine the factories as to their safety
and internal construction ; and Thomas Reed was, on the
2d day of February, 1836, appointed to perform this duty.
It appears, also, that evidence was given to the jury tending
to prove, that, in pursuance of said vote, an agent of the
company visited Bennington and examined the factories
there, and that, subsequently, the company received of the
plaintiffs an instalment of forty four dollars on the policy in
question. On this part of the case, the jury were told that

BENNINGTON,
February,
1840

Allen, Safford
& Co.
*v.*
The Vt. M. F.
Insurance Co.

if they found that the agent of the company went, *in pursuance of the vote of the company, to the factory in question,* and the company afterwards received the instalment, the defendants were liable on the policy of insurance, although they should find that the sizing apparatus was material to the risk, and had been omitted in the application. This was evidently incorrect.

The vote of the company did not contemplate that the agent should examine the factories, " as to their safety and internal construction," with a view of comparing them with the applications, in order to enable the company to decide whether any of the policies were fraudulent. The object seemed to be to make a general examination of them, and there is no evidence that the agent, even, knew what the representation was, as specified in the application, upon which the policy in question was executed. There is no evidence that the agent ever saw, or had any knowledge of the existence of the sizing apparatus. The jury were not, by the instructions given them, required to find such knowledge. The court say, if the agent, in pursuance of the vote of the company, went to the factory in question, and the company afterwards received the instalment, it is sufficient. It is not necessary to decide, whether, if this policy was obtained through the fraudulent suppression of what was material to the risk, it was competent for the company to waive the objection by subsequent matter, so as render valid the policy. If the agent had been clothed with power to examine as to the validity of the policy, it is clear that the reception of a subsequent instalment could not operate as a waiver of such suppression, unless the agent had knowledge, at the time of the payment, of the fact suppressed. This knowledge the jury should, at least, have been told they must find, before they could give any effect to the reception of the instalment. On this ground, then, the judgment of the county court must be reversed and the cause remanded for a new trial.