LOUIS SLOBODISKY V. PHŒNIX INSURANCE COMPANY OF BROOKLYN.

FILED FEBRUARY 17, 1898. No. 7856.

1. **Insurance: AUTHORITY OF AGENT: PREMIUMS.** Whether the agent of an insurance company is invested with authority to waive the payment of the premium in cash and give the insured credit therefor, and whether he did so, are questions of fact.

2. ——: ——: ——. It seems that the authority of an insurance agent to waive the payment of the premium in cash and give the insured credit therefor may be inferred from the fact that the agent is authorized to negotiate contracts of insurance, to fill out and deliver insurance policies executed in blank and left with him for that purpose, and to receive and receipt for insurance premiums, and to make settlements from time to time with his principal for premiums collected.

3. ——: TITLE TO INSURED PROPERTY: WAIVER OF CONDITION. Where no inquiries are made of an insured as to the character or condition of his title; where he makes no false representation as to the character or condition of his title, relying upon which the insurer is induced to and does insure the property; where the insured has an insurable interest in the property, the insurer accepts and retains the premium and a loss occurs, then the insurer cannot escape liability for such loss because of the fact that the insured at the date of the policy was not invested with an absolute and unincumbered title to the insured property, even though the policy provides that it shall be of no validity unless the title of the insured be an unconditional and unincumbered one, as in such case it will be conclusively presumed against the insurer that it intended to and did insure the interest which the insured had in the property and waived the provision in the policy providing for its invalidity by reason of the imperfect title of the insured.

4. ——: OCCUPANCY. Because property is unoccupied at the date of its insurance, the insurer being ignorant thereof, of itself constitutes no defense to an action on the policy.

5. ——: DESCRIPTION: REPRESENTATIONS. The fact that an insured building is described in the policy as a dwelling-house is not a representation of the insured that the house was then and there occupied.

6. ——: INSURABLE INTEREST: JUDICIAL SALE. One may have an insurable interest in real estate though it has been sold at judicial sale, while such sale remains unconfirmed, as the title is not divested until the confirmation of such sale. *Greenlee v. North British & Mercantile Ins. Co.*, 71 N W. Rep. [Ia.] 534, and *Hanover Fire Ins. Co. of New York v. Brown*, 25 Atl. Rep. [Md.] 589, followed.

ERROR from the district court of Douglas county. Tried below before BLAIR, J.  *Reversed.*

*John D. Howe, Parke Godwin,* and *E. R. Duffie,* for plaintiff in error.

*Jacob Fawcett* and *Greene & Breckenridge, contra.*

RAGAN, C.

This is a suit upon an ordinary fire insurance policy brought in the district court of Douglas county by Louis Slobodisky against the Phenix Insurance Company of Brooklyn, New York.  The jury, in obedience to an instruction of the court, returned a verdict for the insurance company, upon which a judgment of dismissal of Slobodisky's action was entered, and he brings that judgment here for review on error.

1. There is no dispute in the record as to the execution and delivery of the policy, nor that a fire occurred destroying some and damaging the remainder of the insured property.  As a defense to the action the insurance company pleaded that the insured had failed and neglected to pay the premium for the insurance, and the policy in suit provided that the company should not be liable thereon until the premium for insurance was actually paid.  Slobodisky replied to this defense that the agents of the insurer who issued the policy in suit were invested with authority to countersign, issue, and deliver policies; that for several years he had carried with said agents a line of insurance in various companies, including the insurance here; that such policies had been issued and delivered to him by said agents and a running account kept by said agents with him for the amount of the premiums on such policies, and that periodical settlements between the insured and said agents took place; that this policy was delivered by the agents of the insurer in the same manner that they had been accustomed to deliver other policies to the insured, the agents giving

56

the insured credit for the premium; and that shortly after the fire the insured tendered the premium to the agents and they refused to accept the same, giving as a reason therefor that they were instructed not to do so by the insurer. At the trial the insured was called as a witness and his counsel attempted to prove by him the facts averred in his reply, but this evidence was excluded by the court. The clause in the insurance policy that the company should not be liable on the policy until the premium should be actually paid was a provision inserted in the policy for the benefit of the insurer, and one which it might waive. The facts stated by the reply of the insured in this case, if true, were sufficient to authorize an inference or sustain a finding that the agents of the insurer did waive the payment of the premium in cash at the time they issued the policy, gave the insured credit for such premium, and that they had authority to do so. Whether the agents of the insurer were invested with authority to waive the payment of the premium in cash and give the insured credit therefor, and whether they did so, were questions of fact for the jury and the court erred in not submitting those questions to the jury. (*Nebraska & Iowa Ins. Co. v. Christiensen*, 29 Neb. 572; *Schoneman v. Western Horse & Cattle Ins. Co.*, 16 Neb. 404; *Pythian Life Ass'n v. Preston*, 47 Neb. 374.) In *Angell v. Hartford Fire Ins. Co.*, 59 N. Y. 171, it was held that where an agent of a fire insurance company was authorized to negotiate contracts of insurance, to fill up and deliver policies executed in blank and left with him for that purpose, he had authority to make parol preliminary contracts to issue a policy, and that the payment of the premium at the time of issuing the policy was not an essential prerequisite to make the contract of insurance binding upon the company; that if the agent gave credit to the insured for the premium, the contract was binding. In *Sheldon v. Connecticut Mutual Life Ins. Co.*, 25 Conn. 207, it was held that an agreement made in good faith between an insurance company's agent having authority to

receive an insurance premium and the insured, that the agent should become personally responsible to his principal for the premium and the insured the agent's debtor therefor, constituted a payment of the premium as between the insured and the insurance company. To the same effect see *O'Brien v. Union Mutual Life Ins. Co.*, 22 Fed. Rep. 586; *Chickering v. Globe Mutual Life Ins. Co.*, 116 Mass. 321; *Harding v. Norwich Union Fire Ins. Soc.*, 71 N. W. Rep. [S. Dak.] 755; *Home Fire Ins. Co. v. Curtis*, 32 Mich. 402.

2. Another defense interposed was that the insured, at the date of the issuance of the policy in suit, had $5,500 of insurance upon the insured property, which added to the $2,500 embraced in this policy made the total insurance on the property $8,000, and that thereby the total insurance on the property was $3,000 more than permitted by the policy, as it only permitted $5,000 insurance upon the insured's property, inclusive of that embraced in the policy in suit. This defense is entirely overthrown by the policy itself, which was a risk of $2,500 placed by the insurer on a dwelling-house of the insured and the furniture therein, $500 being upon the dwelling-house and $2,000 upon the furniture. But the policy, on the face of it, provides that the total insurance permitted by the policy to be placed on the house is $5,000 and the total insurance on the furniture $5,000.

3. A third defense of the insurance company was that at the date of the issuance of the policy in suit the household furniture thereby insured was incumbered by a chattel mortgage, and that the insured wrongfully withheld from the agents of the insurer all knowledge of the existence thereof. The evidence shows that at the date of the issuance of the policy the household furniture was incumbered by a chattel mortgage, but that the value of the personal property, both at the date of the issuance of the policy and at the time of the fire, greatly exceeded the amount of the debt existing against the property which the chattel mortgage was given to secure. The

insured then at the date of the policy and at the time of
the loss of the property had an insurable interest therein.
The insured offered to show on the trial, under a proper
reply, that the agents of the insurer solicited this insur-
ance, and at the time they issued the policy had actual
knowledge of the fact of the existence of the chattel
mortgage upon the household goods. This evidence the
court wrongfully excluded. But the record does not
show, nor was any attempt made to show, that the in-
sured made a written application for this insurance, or
any application whatsoever; nor that he made any repre-
sentation as to the character or condition of the title to
his property at the time of procuring the policy; nor that
any inquiries were made by the insurance agents of him
as to the character or condition of the title to the prop-
erty. For aught that the record shows, no inquiries were
made by the insurance agents and no statements were
made on the subject of the character or condition of the
title to his property by the insured. He was silent upon
the subject, but there is not a word of evidence in the
record to show that the motive which inspired his silence
was a sinister one. Whatever may be the rule elsewhere,
the settled doctrine of this court is that when no inquiries
are made of an insured as to the character or condition of
the title to his property; where he makes no false repre-
sentations as to the character and condition of his title,
relying upon which the insurer is induced to and does
insure such property; where the insured has an insurable
interest in the property insured, and the insurer insures
such property, accepts and retains the premium, and a
loss occurs, then the insurer cannot escape liability for
such loss because of the fact that the insured at the date
of the policy was not invested with an absolute and unin-
cumbered title to the insured property, even though the
policy provides that it shall be of no validity unless the
title of the insured to the property be an unconditional
unincumbered one; as in such a case it will be conclu-
sively presumed against the insurer that it intended to

and did insure the interest which the insured had in the insured property and waived the provision in the policy providing for its invalidity by reason of the imperfect title of the insured. (*Ins. Co. of North America v. Bachler*, 44 Neb. 549; *Slobodisky v. Phœnix Ins. Co. of Hartford*, 52 Neb. 395; *German Ins. & Savings Institution v. Kline*, 44 Neb. 395; *Omaha Fire Ins. Co. v. Thompson*, 50 Neb. 580; *Phenix Ins. Co. v. Fuller*, 53 Neb. 811; *Hanover Fire Ins. Co. v. Bohn*, 48 Neb. 743.) This defense was not established.

4. A fourth defense of the insurance company was that the house insured by the policy in suit at the date of the policy stood upon leased ground; that is, that the insured did not own the fee-simple title to the lot upon which the insured building stood. The evidence shows that the insured, in 1889, leased this lot for twenty years and soon afterwards erected thereon a three-story brick and frame building, which is the one insured by the policy in suit; that he took possession of the leased property and was in possession of it under his lease at the date of the policy and at the time of the fire. In other words, the evidence shows that considering the building erected by him upon the leased lot as affixed to the land and being a part of the lot and therefore real estate, the insured, at the date of the policy and at the time of the loss, had an insurable interest in such property. What has just been said with reference to the third defense of the insurance company is applicable to this defense.

5. Another defense of the insurer was that by the terms of the lease between the insured and his lessor the rent reserved and the taxes upon the property were made a lien upon the insured's interest in this property and that at the time of the issuance of the policy in suit there were certain rents and taxes in arrears, and that these had become and were an incumbrance upon the insured's property, and that by reason of his default the insured's lessor had declared the lease forfeited. But the lessee had not been evicted, nor had any judgment of eviction

been pronounced against him by reason of his default in the payment of his rent. He was in possession and had an insurable interest in the property, and all that has been said of the third defense of the insurance company and the law applicable thereto is likewise applicable to this defense.

6. A sixth defense of the insurance company was that the insured building, at the date of the policy in suit, was unoccupied and that the insurer and its agents had no notice of that fact at the date of issuing the policy. Upon this subject the language of the policy is: "If during this insurance the above mentioned premises shall become vacant or unoccupied, * * * this policy shall cease and be of no force or effect." For the purposes of this case we assume that the evidence shows that the insured building was not occupied at the time of the issuance of the policy. But the defense of the insurer is that he had no notice of that fact when he issued the policy in suit. There is not a word of evidence in this record which establishes, or tends to establish, that fact; nor is there any evidence which shows, or tends to show, that the insured represented to the insurer that the building was occupied at the date of the policy, or that the insurer had any reason to infer from anything that the insured said or did that the building was occupied at the date of the policy. For anything that appears in this record the insurer issued the policy in suit on the building and its contents, then and there knowing that the building was unoccupied. We do not know of any law that prohibits an insurer from taking a risk upon unoccupied property. Whether the property was vacant at the date of the policy, whether the insurance company knew of its vacancy, whether the insured represented that it was occupied and thereby induced the insurer to take the risk, were questions of fact for the jury. But because the property was vacant and the insurer had no knowledge of these facts do not of themselves constitute any defense to this action. The fact that the insured building is de-

scribed in the policy as a dwelling-house cannot by any reasonable construction of language be tortured into a representation of the insured that it was then and there occupied. (*Browning v. Home Fire Ins. Co.*, 71 N. Y. 508.) This defense of the insurer, like the others noted above, was not established.

7. A final defense of the insurance company was that at the date of the issuance of the policy the insured building had been sold at a judicial sale to satisfy a mechanic's lien existing against it. The evidence on this subject shows, or tends to show, that a lien was filed against the property in 1890, nearly three years before the issuance of the policy in suit, for $97; that in June, 1892, a decree was rendered foreclosing this lien, finding the amount due thereon to be $115.72,—this was some eight months before the issuance of the policy in suit; that in June, 1892, an order of sale was issued, but nothing done under it until January, 1893, when a sale was made of the property. After the sale was made, to-wit, February 14, 1893, the policy in suit was issued, and in April, 1894, or more than a year after the issuance of the policy in suit, and after this controversy had arisen, this sale was confirmed. It further appears that this sale was subsequently set aside. But, notwithstanding the fact that the insured property had been sold at a judicial sale, which was presumably pending for confirmation at the date of the issuance of the policy in suit, the insured still had an insurable interest in this property, as his title to the property was not divested by that sale until it was reported and confirmed by the court under whose authority it was made. (See *Greenlee v. North British & Mercantile Ins. Co.*, 71 N. W. Rep. [Ia.] 534; *Hanover Fire Ins. Co. v. Brown*, 25 Atl. Rep. [Md.] 589.) Furthermore, as the sale was finally set aside, the insured property, at the date of the issuance of the policy, was, as a matter of law, incumbered only by the mechanic's lien judgment, and the evidence shows conclusively that at the date of this policy the value of the property exceeded by some thousands

of dollars the amount of this mechanic's lien judgment, and the amount of all liens for taxes and rents due upon the property. In other words, that the insured had an insurable interest in the house. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.