## PACIFIC MUT. LIFE INS. CO. OF CAL. v. O'NEIL.

No. 2114.   Opinion Filed February 11, 1913.

(130 Pac. 270.)

1.  **APPEAL AND ERROR**—Review—Assignments of Error—Waiver. Assignments of error presented by counsel in their brief, if unsupported by authority or argument, will not be noticed by the court, unless it is apparent without further research that they are 'well taken.

2.  **PLEADING**—Demurrer—Waiver of Error.  When a demurrer is sustained to certain paragraph of an answer, and defendant by leave of court files an amended answer setting up the same defenses contained in the original answer, and to which the demurrer was directed, and issues are joined thereon, and a trial had, the defendant waives any error committed by the trial court in sustaining such demurrer.

3.  **EVIDENCE**—Documentary Evidence—Books.  Entries in books made in the ordinary course of business at or near the time of the transaction to which they relate, upon proof of the handwriting of the person who made such entries, in case of his death or absence from the county, may be admitted in evidence.

4.  **APPEAL AND ERROR**—Review—Objections to Evidence.  Remarks made by the trial court pertaining to the relevancy and competency of evidence offered, or in stating illustrative examples or hypothetical cases, held not to constitute reversible error, where the only objection made or exception saved was to the competency of the question propounded to the witness on the stand.

5.  **INSURANCE** — Insurable Interest — Validity of Contract.   One may insure his own life for the benefit of another having no insurable interest therein, where he makes the contract, and pays the premiums himself.

6.  **SAME**—Application—Effect of False Answers.  Under the law in force in the Indian Territory prior to statehood, a false answer to an inquiry giving the relationship between applicant for acci-

dent insurance and the beneficiary, where by the terms of the policy said answer is made a warranty, vitiates the policy, even though made in good faith and without knowledge of its falsity.

7.  **SAME—Forfeiture—Waiver—Estoppel in Pais.** Where, after a policy has become a death claim, the company continues to treat it as a subsisting claim by receipting for the original policy and accepting and retaining proofs of death without condition or objection except to call for the names of additional persons cognizant of the facts of the insured's death, and where, after full knowledge of the facts rendering the policy voidable at its election, the premium paid was retained, and no offer made at any time before or during the trial to repay it, or tender it into court, or to exercise its right to rescind, such acts amount to both waiver and estoppel in pais.

8.  **SAME—Proofs of Loss—Waiver of Defects.** Where proofs of death were received and retained without condition or objection, except to call for the names of additional witnesses, passengers on the train at the time of insured's death, it will be held that the insurance company waived any objections thereto that might otherwise have been urged.

(Syllabus by Sharp, C.)

*Error from District Court, Pittsburg County;*
*Preslie B. Cole, Judge.*

Action by Mary O'Neil against the Pacific Mutual Life Insurance Company of California. Judgment for plaintiff, and defendant brings error. Affirmed.

*Masterson Peyton,* for plaintiff in error.

*James S. Arnote,* for defendant in error.

Opinion by SHARP, C. The original petition in error contains 69 assignments of error, the amended petition in error four additional assignments. Authorities are cited in support of but eleven of the points urged as grounds for reversal, and some of these involve a consideration of the same question, being presented in a somewhat changed form; the brief of counsel as to the remaining questions consisting of little more than a restatement of the several assignments of error, followed by the general statement that by reason thereof the court committed error. This court has recently passed upon this identical question in *Title Guaranty & Surety Co. v. Slinker,* 35 Okla. 128, 153, 128 Pac. 696, where it was held that assignments of error presented

by counsel in their brief, where unsupported by authority, would not be noticed by the court, unless it was apparent without further research that they were well taken.

Among other assignments urged is that the court erred in sustaining plaintiff's demurrer to paragraphs 5, 6, and 7 of the defendant's original answer. In view, however, of the fact that the defendant filed an amended answer, setting up specifically the several defenses pleaded in the original answer, to which the demurrer was directed, the error, if such it was, was thereby waived, and cannot here be assigned as ground for reversal. *Tecumseh State Bank v. Maddox,* 4 Okla. 583, 46 Pac. 563; *Kingman & Co. v. Pixley,* 7 Okla. 351, 54 Pac. 494; *Berry et al. v. Barton et al.,* 12 Okla. 221, 71 Pac. 1074, 66 L. R. A. 513; *Morill et al. v. Casper et al.,* 13 Okla. 335, 73 Pac. 1102; *Carle et al. v. Oklahoma Woolen Mills,* 16 Okla. 515, 86 Pac. 66; *Board of County Com'rs v. Beauchamp,* 18 Okla. 1, 88 Pac. 1124; *Hale v. Broe,* 18 Okla. 147, 90 Pac. 5; *Pattee Plow Co. v. Beard,* 27 Okla. 239, 110 Pac. 752, Ann. Cas. 1912B, 704; *Chidsey et al. v. Ellis et al.,* 31 Okla. 107, 125 Pac. 464.

Assignments of error four to thirteen, inclusive, concern the admission of the testimony of E. L. Dubois, a clerk in the office of the treasurer of the Midland Valley Railroad Company, and the admission in evidence of the deduction order book and other records of said office. The records referred to were kept by Thomas V. Cleever, timekeeper, who was at the time out of the jurisdiction of the court, having gone, according to the information of the witness, to the republic of Mexico. The proper predicate having been laid, we think the testimony competent under the rule laid down in *First Nat. Bank of Enid v. Yeoman,* 14 Okla. 626, 78 Pac. 388; *Missouri, K. & T. Ry. Co. v. Davis,* 24 Okla. 677, 104 Pac. 34, 24 L. R. A. (N. S.) 866; *Missouri, K. & T. Ry. Co. v. Walker,* 27 Okla. 849, 113 Pac. 907; *Muskogee Electric Traction Co. v. McIntire,* 37 Okla. —, 129 Pac. 830.

The policy of insurance was issued in consideration of an order given by Thomas O'Neil on his employer, the Midland

Valley Railroad Company, which authorized said employer to deduct from the wages of said employee certain specified sums of money, the same to be paid at stated intervals to the insurer. This order was given contemporaneously with the issuance of the policy, and directed that the first premium paid should be for a period of two months. The records introduced showed that, pursuant to said order, the deduction had been made from the insured's wages from the May pay roll, and a check drawn in favor of the Pacific Mutual Insurance Company June 1, 1907, for $11.90, which check was indorsed by the insurer, and deposited with the Corn Exchange National Bank of Chicago, and paid by the First National Bank of Muskogee, on which bank it was drawn, on June 27, 1907. It was shown that the amount of the check included a deduction in favor of the insured for $7.50, and of another employee for $5, the railroad company deducting 60 cents commission. This testimony was clearly competent, and was introduced for the purpose of showing the payment of the premium according to the terms of the policy. The fact that payment was made after the insured's death is of no consequence, as the policy was issued in consideration of. the order given, and not its payment previous to his death. In fact, the order contains an express stipulation providing that in making settlement for any claim any amount payable on account thereof should first be applied to the payment of any premium for each and all of the insurance periods for which payment had not previously been made.

The fifteenth, twenty-third, twenty-fifth, twenty-seventh, and twenty-eighth assignments of error concern remarks made by the trial court, which it is claimed were calculated to prejudice the minds of the jury, but, upon referring to the record, we find that the only exceptions saved were made to the ruling of the court on the admission of evidence and not the remarks complained of.

As to the twenty-ninth assignment of error, a sufficient objection to the court's remarks was made, but, in view of our conclusions, the defendant was in no wise prejudiced by such statements.

It is urged that the plaintiff at the time of the issuance of the policy had no insurable interest in the life of the insured, and hence plaintiff cannot recover.   Plaintiff and insured had been husband and wife for eighteen years, and up until March 25, 1907, when a decree of divorce was rendered in plaintiff's favor in an action theretofore begun by her in the United States court at McAlester, in October, 1906.   On the date that the insured took out the policy of insurance it does not appear that he knew that his wife had obtained a divorce.   He had previously written her, asking that she abandon the divorce proceedings, to which she promptly replied that she would do so.   Some time prior to this, and in the month of February, plaintiff had given her deposition in said divorce proceedings.   At that time the very general practice that prevailed in the United States courts in the Indian Territory was to hear all divorce cases either upon depositions or testimony given before the master in chancery. At the time plaintiff heard from her husband, she was visiting a relative at Ft. Cobb, in Western Oklahoma.   After advising her husband that she would abandon the divorce proceedings, she neglected to advise her attorney of her conclusion, expecting as she testified, to be at McAlester, and see him in person, but was prevented from doing so by being detained at Ft. Cobb on account of the illness of a relative.   The divorce was obtained shortly afterwards, when it appears from the testimony her husband wrote her again, and a reconciliation between them was effected, and their remarriage agreed upon.   This was the relation of the parties at the time.   The policy of insurance was taken out by the insured on his own life, and paid for on his own order out of his wages, and, so far as we have examined the authorities, the courts of last resort, with possibly one or two exceptions, and the text-writers on insurance generally, are agreed that a person may take out insurance upon his own life and designate whom he pleases as the beneficiary.   *Rupp v. Western Life Ins. Co.,* 138 Ky. 18, 127 S. W. 490, 29 L. R. A. (N. S.) 675; *Hess v. Segenfelter,* 127 Ky. 348, 105 S. W. 476, 32 Ky. Law Rep. 225, 14 L. R. A. (N. S.) 1172, 128 Am. St. Rep. 343; *Heinlein v. Imperial Life Ins. Co.,* 101 Mich. 250, 59 N. W. 615, 25 L. R. A.

627, 45 Am. St. Rep. 409; *Union Fraternal League v. Walton,* 109 Ga. 1, 34 S. E. 317, 46 L. R. A. 424, 77 Am. St. Rep. 350; *Milner v. Bowman,* 119 Ind. 448, 21 N. E. 1094, 5 L. R. A. 95; *Hill v. United Life Ins. Co.,* 154 Pa. 29, 25 Atl. 771, 35 Amer. St. Rep. 807; *Elkhart Mutual, etc., Ass'n v. Houghton,* 103 Ind. 286, 2 N. E. 763, 53 Am. Rep. 514; *Albert v. Mutual Life Ins. Co.,* 122 N. C. 92, 30 S. E. 327, 65 Am. St. Rep. 693; *Bloomington Mutual, etc., Ass'n v. Blue,* 120 Ill. 121, 11 N. E. 331, 60 Am. Rep. 558. In *Connecticut Mutual Life Ins. Co. v. Shaefer,* 95 U. S. 457, 24 L. Ed. 251, it was said by Mr. Justice Bradley, speaking for the court:

"It is well settled that a man has an insurable interest in his own life and in that of his wife and children, a woman in the life of her husband, and the creditor in the life of his debtor. Indeed, it may be said generally that any reasonable expectation of pecuniary benefit or advantage from the continued life of another creates an insurable interest in such life. And there is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend; or two or more persons, on their joint lives, for the benefit of the survivor or survivors. * * * The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest."

The same rule was announced in *Aetna Life Insurance Co. v. France,* 94 U. S. 561, 24 L. Ed. 287. This being a case arising in the Indian Territory prior to statehood, and the rights of the parties having attached under the laws then in force, these decisions are of controlling force. The relations of the parties were not immoral; and, while the insured perhaps owed to his divorced wife no legal obligation, yet from their past relations and from the new relations assumed there was a strong moral obligation of support resting upon the insured.

The statement contained in the application of the insured that the beneficiary named therein bore to him the relationship of wife was untrue, though not known to be so when made, and the good faith of the insured is not seriously questioned. The authorities differ as to the legal consequences of a false statement as to the relations existing between the insured and his bene-

ficiary, the one class holding the designation of the party to whom the policy is to be paid, even where the statement in the application is expressly made a warranty, does not amount to such, and, if untrue, does not render the policy void, but is simply a direction by the insured as to whom the insurance should be paid. *Cunat v. Supreme Tribe of Ben Hur,* 249 Ill. 448, 94 N. E. 925, 34 L. R. A. (N. S.) 1192, Ann. Cas. 1912A, 213; *Lampkin v. Traveler's Ins. Co.,* 11 Colo. App. 249, 52 Pac. 1040; *Standard Life & Accident Ins. Co. v. Martin,* 133 Ind. 381, 33 N. E. 105; *Story v. Williamsburgh Masonic Mut. Ben. Ass'n,* 95 N. Y. 474. In other cases the falsity of a statement of relationship is held to be sufficient ground for forfeiture. May on Insurance, sec. 263. Such was the view entertained by the Supreme Court of the United States in *Jeffries, Adm'r, v. Economical Life Ins. Co.,* 22 Wall. 47, 22 L. Ed. 833, where it was held that a false answer to an inquiry, whether the applicant had made any other application to have his life insured, and whether he was married or single, was sufficient to avoid the policy. This latter being a decision of the highest court in the land, and, as already seen, the case at bar being one that arose in the Indian Territory, we are precluded of an opportunity to choose between the two lines of decisions. *Moore v. Atchison, T. & S. F. Ry. Co.,* 26 Okla. 682, 110 Pac. 1059; *Chicago, R. I. & P. Ry. Co. v. Newburn,* 27 Okla. 9, 110 Pac. 1065, 30 L. R. A. (N. S.) 432; *Summers v. Alexander,* 30 Okla. 198, 120 Pac. 601, 38 L. R. A. (N. S.) 787; *Kansas City Bridge Co. v. Lindsay Bridge Co.,* 32 Okla. 31, 121 Pac. 639. If no other controlling question intervened, upon that ground alone our decision must be that the statement of the relationship between the insured and the beneficiary, even though made in good faith, being in fact untrue, the terms of the warranty were violated and no recovery would lie.

It is urged, however, by counsel for defendant in error that in any event the plaintiff in error is not in a position to urge a forfeiture for the reason that the defendant company by its conduct has waived its right to insist upon such forfeiture. The all-important question for our consideration therefore is: Was there

a waiver on the part of the insurance company, or is it estopped from insisting upon one or both of the grounds of forfeiture? Upon the first ground of forfeiture—*i. e.*, that the insured's habits of life were not correct and temperate—there was we think, a failure of proof upon the part of the defendant to establish this fact. Not only is this true, but we find the truthfulness of the statement is amply supported by the evidence.

Upon the second ground of forfeiture, that plaintiff was not at the date the policy was written the wife of the insured, there is no dispute in the testimony. The policy bears date April 30, 1907. Its consideration was an order, executed by the insured, on his employer, the Midland Valley Railroad Company, to deduct and pay from the insured's monthly wages a fixed sum at stated periods. The insured was accidentally killed while a passenger on one of the Midland Valley Railroad Company's passenger trains between Stigler and Porum, Ind. T., on the 22d day of May, 1907. On June 15, 1907, in the course of submitting proof of death, the original policy was delivered to Masterson Peyton, who was at the time counsel for the insurance company, and who executed his receipt therefor, and which policy remained in the possession of the company until during the trial of the case. On or about the 13th day of July there was delivered to said Masterson Peyton proof of death of said Thomas O'Neil, consisting of the affidavits of C. N. Campbell, Lee Hoffman, J. C. Downey, and C. H. Foster. The affidavit of C. N. Campbell was prepared in the office of said Peyton, but not by him, though in his presence. Following the delivery of these proofs of death the law firm of Peyton & Mason, of which Masterson Peyton was a member, addressed a letter to the plaintiff at South McAlester, as follows:

"I am just in receipt of your esteemed favor of yesterday giving me the names of J. D. Downey, Lee Hoffman and his wife Bertha. Please accept my thanks for same. You have already furnished the affidavits of two of the parties above mentioned and Mrs. Hoffman is the wife of one of said parties. The Company would, therefore, like to have the names of three other disinterested parties who were upon the train upon which your husband was riding just previous to his death. Find here-

with inclosed stamped envelope in which please give us three additional names with post-office address if possible."

October 15th following said Peyton delivered to the plaintiff a copy of the policy, the original of which had previously been delivered to him, the receipt therefor reciting that, upon return of the original policy to plaintiff, she would, in turn, deliver the copy to said Peyton. Suit was brought on November 15, 1907, and on March 3, 1908, defendant filed its answer, denying liability under its policy of insurance; and on April 22d filed its amended answer, in which it charged (1) that defendant's death was due to his own gross negligence: (2) false and fraudulent statements contained in the application, in that the habits of life of the insured were not correct and temperate and that the beneficiary in said policy of insurance was not the insured's wife; that these false and fraudulent representations contained in the application vitiated and rendered invalid the policy, and thereby the defendant company was not liable to plaintiff in any. sum. It does not appear that at any time did defendant company notify plaintiff that by reason of the alleged false and fraudulent statements and warranties it was not bound by reason of the provisions of the policy, nor did it at any time tender or offer to tender to any one the premium paid it on account of said policy; the only notice of the company's purpose and intent being that disclosed in its answer. It does not appear at what particular time the defendant company first learned of the alleged grounds of forfeiture. Is the company, therefore, under the facts stated in a position to urge a forfeiture? So far as the record discloses, the policy was treated as a subsisting obligation until the date of the filing of the original answer, in which among other defenses urged was (1) a failure to submit proper proof of death; (2) a denial that the insured's death was accidental, but, on the other hand, was the result of gross negligence on his part by reason of his being at the time completely under the influence of liquor, hence, for that reason, no liability under the policy of insurance ever attached.

In *New Life Ins. Co. v. Baker*, 83 Fed. 647, 27 C. C. A. 658, affirming the judgment of the Circuit Court in 77 Fed. 550,

it was held that the conduct of the defendant company, after it had discovered the respects in which the statements made by the insured were untrue, amounted to a waiver of its right to refuse payment on that ground. It was said that the falsity of the statements complained of did not render the policy void in the sense that an illegal contract, or one that cannot be performed, is void; that the falsity of the statements complained of merely rendered the contract voidable at the election of the insurer. There, after knowledge of all the facts which would have rendered the policy voidable at its election, the company continued to treat the same as a subsisting obligation for more than seven months, and in the meantime dealt with the plaintiff below upon that basis. At its instance plaintiff was induced to take out letters of guardianship to complete proofs of loss, which the court observed doubtless put her to considerable expense. The premium was not returned, and no offer made to repay it for a year after the company had acquired full knowledge of its alleged right to rescind. It was observed by the court that the acts in question amounted both to a waiver and estoppel *in pais;* that good faith and fair dealing required the company to be more prompt in asserting its right to treat the policy as void, and in taking the necessary steps to rescind the contract; that, after acquiring knowledge that the policy was invalid, it was not entitled to exact from the plaintiff a technical compliance with the provisions of the policy relative to the proofs of loss, which would involve considerable trouble and expense, unless, on its part, it would resolve to pay the loss when such proofs were submitted. The court cites in support of its conclusion *Titus v. Ins. Co.,* 81 N. Y. 410, 419; *Ins. Co. v. Norton,* 96 U. S. 234, 241, 24 L. Ed. 689; *Gray v. Association,* 111 Ind. 531, 11 N. E. 477; *Hollis v. Ins. Co.,* 65 Iowa, 454, 459, 21 N. W. 774; *Society v. Winning,* 19 U. S. App. 173, 185, 7 C. C. A. 359, 58 Fed. 541; *Webster v. Ins. Co.,* 36 Wis. 67, 17 Am. Rep. 479; *Marthinson v. Ins. Co.,* 64 Mich. 372; 31 N. W. 291. That an insurance company may waive any provision in a policy intended for its benefit is a principle that requires no citation of authorities in its support. Where there has been a breach in the conditions of a

policy, the company may, at its election, take advantage of such breach and cancel the policy, or it may waive the forfeiture, by acts as well as words. It is always required that the company, as well as the insured, should proceed in the utmost good faith. The consideration for the insurance is the premium paid, and if, when paid and appropriated by the company, it may, while retaining the premium, be allowed to plead that the contract of insurance is void *ab initio,* then in such cases the insurer would be bound only at its pleasure. In *Schoneman v. Western, etc., Ins. Co.,* 16 Neb. 404, 20 N. W. 284, it is said:

"The company received the premium for that policy, and have appropriated the same to their own use. If the policy was obtained by fraud, they should have tendered back the premium and asked for the cancellation of the policy. But this they have not done. The instruction asked therefore should have been given"

—citing *Viele v. Ins. Co.,* 26 Iowa, 10, 96 Am. Dec. 83; *Baldwin v. Chouteau Ins. Co.,* 56 Mo. 151, 17 Am. Rep. 671; *Joliffe v. Ins. Co.,* 39 Wis. 111, 20 Am. Rep. 35; *Ins. Co. v. Schollenberger,* 44 Pa. 259; *Ins. Co. v. Bowen,* 40 Mich. 147; *Bowman v. Ins. Co.,* 59 N. Y. 521; *Hodsdon v. Ins. Co.,* 97 Mass. 144, 93 Am. Dec. 73; *Boehen v. Ins. Co.,* 35 N. Y. 131, 90 Am. Dec. 787; *Sheldon v. Ins. Co.,* 26 N. Y. 460, 84 Am. Dec. 213; *Young v. Ins. Co.,* 45 Iowa, 377, 24 Am. Rep. 784; *Smith v. Ins. Co.,* 3 Dak. 80, 13 N. W. 355; *Ins. Co. v. McLanathan,* 11 Kan. 533; *Mershon v. Ins. Co.,* 34 Iowa, 87; *Keim v. Ins. Co.,* 42 Mo. 38, 97 Am. Dec. 291. In *Glens Falls Ins. Co. v. Michael,* 167 Ind. 659, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708, the court at length reviews the decisions of many of the courts. The opinion in part reads: .

"A court cannot, by its fiat alone, render a voidable contract void, but it can only adjudge that the party entitled to avoid it has done so, and that it thereby and for that reason became invalid. If appellant desired to avoid this policy for the reason pleaded, it was required to act with reasonable promptness after acquiring knowledge of the facts, and thereupon it was its duty to notify appellees of its decision to avoid the policy, and of the reasons therefor, and to return or tender, or in some appropriate way manifest its willingness and readiness to restore the unearned

premium received. The answers filed do not disclose the time when appellant learned the true state of appellees' title, nor deny knowledge of the same at the time of issuing the policy, but proceed upon the theory that the policy was void *ab initio* and without any action on the part of the insurer. This theory was wrong, and the averment of facts insufficient. The answers should have pleaded the covenants or conditions relied upon, a breach, and the acts done by the appellant in pursuance of its election to avoid the contract. Appellant's contention is that, under the terms of the policy, no risk attached, and no liability was assumed by it at any time. It must therefore follow that there was no consideration for the premium received, and good faith and common fairness required its prompt return; and the insurer, by retaining such premium with full knowledge of the facts, waives the right to insist upon a forfeiture of the policy. *Hanover Fire Ins. Co. v. Bohn,* 48 Neb. 743, 67 N. W. 774, 58 Am. St. Rep. 719; *Queen Ins. Co. v. Young,* 86 Ala. 424, 5 South. 116, 11 Am. St. Rep. 51; *German Ins. Co. v. Shader,* 68 Neb. 1, 93 N. W. 972, 60 L. R. A. 918; *Fraser v. Aetna Life Ins. Co.,* 114 Wis. 510, 524, 90 N. W. 476; *Sharp v. Scottish Union & Nat. Ins. Co.,* 136 Cal. 542, 69 Pac. 253, 254, 615; *Pearlstone v. Westchester Fire Ins. Co.,* 70 S. C. 75, 49 S. E. 4; *Harris v. Equitable Life Assur. Soc.,* 64 N. Y. 197; *Slobodisky v. Phoenix Ins. Co.,* 53 Neb. 816, 74 N. W. 270; *McQuillan v. Mutual Reserve Fund Life Ass'n,* 112 Wis. 665, 87 N. W. 1069, 88 N. W. 925, 56 L. R. A. 233, 88 Am. St. Rep. 986; *Schreiber v. German-American Hail Ins. Co.,* 43 Minn. 367, 45 N. W. 708; *Union Cent. Life Ins. Co. v. Jones,* 17 Ind. App. 592, 47 N. E. 342."

Section 12 of the policy provides that a failure on the part of the insured or any one claiming under the policy to comply with any of the foregoing agreements should render the policy void. Even though this provision under the facts should be held to include statements contained on the back of the policy, the legal effect would be simply to render it voidable at the election of the insurer; but the insurer could waive the forfeiture and continue the policy in force, as in all contracts where stipulations avoiding the same are inserted for the sole benefit of one of the parties. The word "void" in such cases is to be construed as though the contract read "voidable." *Viele v. Germania Ins. Co.,* 26 Iowa, 9, 96 Am. Dec. 83; *Gans v. St. Paul F. & M. Ins. Co.,* 43 Wis. 108, 28 Am. Rep. 535; *Frost v. Saratoga Mut. Ins.*

*Co.,* 5 Denio (N. Y.) 154, 49 Am. Dec. 234. It would there-
fore follow, as was said in *Masonic Mutual Benefit Ass'n v. Beck,*
77 Ind. 203, 40 Am. Rep. 295:

"That a distinct act of affirmance of the contract by the
party entitled to avoid it, made with knowledge of the facts
and especially such acts as the demand and receipt of premiums
or assessments, would constitute a waiver of the forfeiture or
of the right to annul the contract.   *   *   *"

In *Kidder v. Knights Templars & Masons Life Indemnity
Co.,* 94 Wis. 538, 69 N. W. 364, the court in quoting with ap-
proval from *Cannon v. Home Ins. Co.,* 53 Wis. 593, 11 N. W.
13, used the following language:

"That a party cannot occupy inconsistent grounds or posi-
tions; that one who relies upon the forfeiture of a contract can-
not, at the same time, treat the contract as an existing, valid one,
nor call upon the other party to the contract to do anything re-
quired by it; or, to apply the proposition to the precise facts in
the case, that, as the defendant, in its correspondence with the
attorneys of the plaintiff, after full knowledge of the forfeiture,
saw fit to call for additional proofs of loss, recognizing by this
act the continued validity of the policy, it could not, after the
plaintiff had gone to the expense and trouble of furnishing these
proofs, change its ground and claim that the policy was no longer
in force."

It seems that the defendant company's attorney at Muskogee
actively had charge of procuring the proofs of loss, and the nec-
essary preliminary steps having to do with settlement of the
company's liability.  At an early date this attorney had pro-
cured from the plaintiff the original policy, receipting therefor,
and some four months thereafter delivered to plaintiff a copy
of the policy obtained from the home office in Los Angeles. The
proofs were filed with this attorney, and he, in turn, called upon
the plaintiff for not additional proof of death, but the names of
disinterested witnesses riding upon the train at the time of the
insured's death. This same attorney was afterwards employed
to defend plaintiff's action, and in the answer filed promptly
asserts as one of the defenses the forfeiture of the policy, but
without any previous offer to rescind the contract on the ground
of the alleged fraud on the part of the insured, and, further,

without any form of offer or tender of the return of the premium. If, as may have been the case, defendant company did not know of the alleged grounds of forfeiture at or about the time that the proofs of death were being secured, notwithstanding that plaintiff's decree of divorce was a matter of public record at Mc-Alester, yet it is certain that it had this knowledge at the time that its answer was prepared, and, if knowledge of the facts had been by it only lately acquired, these facts could have been pleaded, and an offer made to rescind the contract by a tender into court of the premiums received. But it did not see fit to do either, and from the authorities cited and those which follow it should not be permitted to occupy the inconsistent position of retaining the premiums, the only right to which it can claim being through the policy itself, and then say that notwithstanding these facts it is relieved from the performance of its part of the original undertaking. By its conduct it has waived the grounds of forfeiture, and treated the policy of insurance as of binding effect upon itself. *New York Life Ins. Co. v. Baker,* 27 C. C. A. 658, 83 Fed. 647; *Id.* (C. C.) 77 Fed. 550; *Society v. Winning,* 7 C. C. A. 359, 58 Fed. 541; *Insurance Co. v. Norton,* 96 U. S. 234, 24 L. Ed. 692; *Schoneman v. Western, etc., Ins. Co.,* 16 Neb. 404, 20 N. W. 284; *Cotten v. Fidelity & Casualty Co.* (C. C.) 41 Fed. 506; *Gray v. Ass'n,* 111 Ind. 531, 11 N. E. 477; *Oshkosh Gaslight Co. v. Germania Fire Ins. Co.,* 71 Wis. 454, 37 N. W. 819, 5 Am. St. Rep. 233; *Hollis v. Ins. Co.,* 65 Iowa, 454, 21 N. W. 774; *Masonic Mutual Benefit Ass'n v. Beck,* 77 Ind. 203, 40 Am. Rep. 295; *Marthinson v. Ins. Co.,* 64 Mich. 372, 31 N. W. 291; *Bevin v. Connecticut Mut. Life Ins. Co.,* 23 Conn. 244; *Viele v. Germania Ins. Co.,* 26 Iowa, 9, 96 Am. Dec. 83; *Hodsdon v. Guardian Life Ins. Co.,* 97 Mass. 144, 93 Am. Dec. 73; *Titus v. Glens Falls Ins. Co.,* 81 N. Y. 419; *Gans v. St. Paul F. & M. Ins. Co.,* 43 Wis. 109, 28 Am. Rep. 535; *Carpenter v. Continental Ins. Co.,* 61 Mich. 635, 28 N. W. 749; *Allen v. Vermont Ins. Co.,* 12 Vt. 366; *Webster v. Phoenix Ins. Co.,* 36 Wis. 67, 17 Am. Rep. 479; *Mechanics' & Traders' Ins. Co. v. Smith,* 79 Miss. 142, 30 South. 362; *Northwestern Mut. Life Ins. Co. v. Freeman,* 19

Tex. Civ. App. 632, 47 S. W. 1025; *Phoenix Mut. Life Ins. Co. v. Raddin,* 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644. These views find strong support in the decisions of this court in the following cases: *Gish et al. v. Ins. Co. of North America,* 16 Okla. 59, 87 Pac. 869, 13 L. R. A. (N. S.) 826; *Taylor v. Ins. Co. of North America,* 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906; *St. Paul F. & M. Ins. Co. v. Cooper,* 25 Okla. 38, 105 Pac. 198. In the former case it was held that the return of the unearned premium in a fire insurance policy was essential to a cancellation of the policy by the insurance company. In the latter case it was said that the acceptance of the premium by the local agent of the insurance company, after the death and notice of loss, operated as a waiver of the forfeiture and rendered the company liable on the policy from its inception, as though the premium note had been paid when due.

As to the sufficiency of the proofs of death, the defendant company by accepting and retaining those furnished, even though they were not in the form required by the terms of the policy, waived any objection thereto. *St. Paul F. & M. Ins. Co. v. Mittendorf,* 24 Okla. 651, 104 Pac. 354, 28 L. R. A. (N. S.) 651; *Arkansas Ins. Co. v. Cox,* 21 Okla. 873, 91 Pac. 552, 20 L. R. A. (N. S.) 775, 129 Am. St. Rep. 808; 4 Cooley's Briefs on the Law of Ins. 3544; Bliss on Life Ins., sec. 268. Not only this, but by subsequently denying any liability thereunder the agreement to furnish proofs of a particular character was waived. *Farmers' & Merchants' Ins. Co. v. Cuff,* 29 Okla. 106, 116 Pac. 435, 35 L. R. A. (N. S.) 892.

Having concluded that the insurer has waived its right to insist upon the original forfeiture, a consideration of a large number of the remaining assignments of error is rendered unnecessary. While there may have been trivial errors committed in the admission of testimony, it has not been shown that they were of such a nature as could have influenced the jury's verdict. There is little material conflict in the testimony except upon the question that the habits of life of the insured were not correct and temperate, as stated in his application, and upon the further question that the insured's death was caused by his own

acts of gross negligence. These questions of fact were resolved against the company by the jury, and, there being evidence tending to support the verdict, it will not be disturbed.

For the reasons given, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.